*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VIKTOR BERISAJ,

        Plaintiff-Appellant,

v

LTF CLUB OPERATIONS COMPANY, INC.,
doing business as LIFETIME FITNESS, and
GREGORY PEDERSEN,

        Defendants-Appellees.

UNPUBLISHED
February 26, 2019

No. 341401
Wayne Circuit Court
LC No. 16-007140-NO

Before: CAVANAGH, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

Plaintiff, Viktor Berisaj, appeals as of right the trial court's order granting summary disposition in favor of defendants, LTF Club Operations Company, Inc., doing business as Lifetime Fitness (Lifetime), and Gregory Pedersen, in this action involving allegations of gross negligence and willful and wanton misconduct in the provision of personal training services. We affirm.

Plaintiff initially joined Lifetime in March 2007. Several years later, on September 22, 2015, plaintiff began individual fitness training sessions at Lifetime with Pedersen, a personal trainer. Plaintiff had been involved in a car accident in November 2014, after which he received physical therapy for low back pain. Plaintiff participated in 17 personal training sessions with Pedersen and then stopped attending because of back pain. Thereafter, plaintiff brought this action in ordinary negligence, gross negligence, and willful and wanton misconduct. The trial court dismissed plaintiff's ordinary negligence claims based on two waivers plaintiff signed when he joined Lifetime and when he purchased the personal training package. The trial court also granted summary disposition on the remaining claims after concluding that no genuine issue of material fact remained. Plaintiff now appeals as of right.

We review de novo a trial court's decision on a motion for summary disposition. *Cichewicz v Salesin*, 306 Mich App 14, 21; 854 NW2d 901 (2014). "A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim." *Maiden v Rozwood*, 461 Mich

109, 120; 597 NW2d 817 (1999). When reviewing a motion for summary disposition brought under subrule (C)(10), the court must examine all documentary evidence presented to it, and drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. *Dextrom v Wexford Co*, 287 Mich App 406, 430; 789 NW2d 211 (2010). The court reviews the evidence but may not make findings of fact or weigh credibility in deciding a summary disposition motion. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Dextrom*, 287 Mich App at 416. The nonmoving party may not rest upon its pleading, but must set forth specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4). A trial court properly grants the motion when the evidence fails to establish any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.; see also *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

Plaintiff argues that this Court should reverse the trial court's grant of summary disposition on his gross negligence and willful and wanton misconduct claims because when viewing the evidence in the light most favorable to plaintiff, without making credibility determinations, and drawing all inferences in plaintiff's favor, a reasonable juror could conclude that defendants' conduct constituted gross negligence and/or willful and wanton misconduct. We disagree.

Gross negligence occurs where a party's "conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Xu v Gay*, 257 Mich App 263, 269; 668 NW2d 166 (2003) (citation and quotations omitted). "Evidence of ordinary negligence does not create a question of fact regarding gross negligence." *Id*. at 271. A plaintiff cannot satisfy a gross negligence claim by merely stating that a defendant could have taken additional precautions. *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). Gross negligence occurs where "if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Id*. In contrast, willful and wanton misconduct is not simply a higher degree of carelessness, but rather "is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Burnett v City of Adrian*, 414 Mich 448, 455-456; 326 NW2d 810 (1982).

Here, reasonable minds could not differ regarding whether defendants' conduct rose to the level of gross negligence. Accepting as true plaintiff's claim that neither Pedersen nor his supervisor performed a formal physical assessment of plaintiff before beginning the personal training sessions at Lifetime, plaintiff still has not shown a reckless disregard for his safety. The record is clear that plaintiff presented himself to defendants at the Lifetime personal training area and they could clearly see he was overweight and had poor posture. Plaintiff testified that he told Pedersen about his back injury and that his goal was to do a little bit of cardio and to lose some weight. Plaintiff told defendant that he did not want to do any strenuous exercises because he did not want to injure his back. Plaintiff testified that, at his very first training session, Pedersen had plaintiff stretch while lying on the floor, and had plaintiff put a foam roller under his back and a ball between his knees to squeeze. This testimony is consistent with Pedersen's

testimony that, in order to assess plaintiff's capabilities, he put plaintiff in different positions and watched him move and gauged his strength and fitness level before they began training.

Plaintiff testified that Pedersen focused on stretching, improving plaintiff's posture, and the importance of warming up before working out. Plaintiff testified that Pedersen repeatedly told him to use the foam roller on his back to release his back muscles even at home. Plaintiff did not contradict Pedersen's testimony that he created a low intensity fitness regimen for plaintiff with modified exercises that considered the condition of plaintiff's back. Both plaintiff and Pedersen described the exercises as including stretching, working with wobble balls, cardio on the elliptical machine and treadmill, and modified weight lifting either on the incline bench in which plaintiff's back was fully supported or on a flat bench in which plaintiff was lying on his stomach lifting from the floor so as not to put pressure on his back.

Plaintiff testified that he did complain to Pedersen about the intensity of the cardio, that some of the exercises were difficult, and that Pedersen was pushing him too hard. Plaintiff stated that Pedersen would respond by encouraging him and saying things like, "yeah, you'll do it, just go ahead and try it, you'll make it," which is, in fact, exactly the job of a personal trainer—to boost a client's confidence and inspire him to continue to improve his health. Plaintiff chose to participate in 17 training sessions and stated that he was trying to motivate himself by telling himself that he could do it, to try harder, and made himself go to the training sessions. Plaintiff testified that he never refused to do an exercise Pedersen told him to do. This was the case even though plaintiff was the only person who could feel the condition of his back, his pain level, and knew his own tolerance. Choosing whether to participate in the training sessions and do particular exercises was within plaintiff's sole discretion. Plaintiff acknowledged that he knew he could stop doing any exercise that caused him pain, leave at any time, or simply not go to the gym.

Plaintiff stated that Pedersen spoke to him about his eating habits, they discussed healthy eating, and over the course of the sessions they continued to discuss what plaintiff was eating during the day. The content of text messages exchanged over the course of the training relationship between the parties shows that Pedersen was invested in plaintiff's well-being, and concerned about plaintiff's back pain. Text messages indicate that Pedersen checked on plaintiff and asked him how his back was doing repeatedly throughout their relationship. Plaintiff sometimes stated that his back was hurting, sometimes indicated that it was not so bad or was easing up, and ultimately indicated that he could not continue because his back was "very very bad" and he could barely move. Pedersen also recommended stretching, foam roller work, heat, and posture correction. Pedersen tried to be encouraging and offered a free stretching session, and more suggestions like yoga, massage, analgesic cream, a back belt, and rest. Pedersen sent links to plaintiff with information about spine health. Pedersen also advised plaintiff to see a chiropractor or get physical therapy. Pedersen continued to check on plaintiff and asked plaintiff to keep him updated.

Our careful review of the record reveals that Pedersen kept plaintiff's limitations in mind and never forced plaintiff to perform any unsafe or dangerous exercises that would amount to conduct so reckless as to demonstrate a substantial lack of concern for whether injury resulted. See *Xu*, 257 Mich App at 269. As the trial court rightly pointed out, "[i]t is common knowledge that personal trainers push and encourage their clients to go beyond their subjective physical

limitations and it is common for clients to complain during strenuous workout sessions." The record reveals that Pedersen was invested in improving plaintiff's health and fitness, including the condition of his back both in and out of the gym. Plaintiff also failed to demonstrate that Pedersen showed an intent to harm him or exhibited an indifference to whether harm would result during the course of their personal training relationship. See *Burnett*, 414 Mich at 455-456.

Moreover, "[s]imply alleging that an actor could have done more is insufficient under Michigan law, because with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea*, 263 Mich App. at 90. "[S]aying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent." *Id*. Plaintiff has produced no evidence that any personal training responsibilities that Pedersen engaged in were performed so deficiently as to equate with a lack of concern for plaintiff's safety. Pedersen's conduct was far removed from a substantial lack of concern for plaintiff's safety and well-being.

Finally, plaintiff provides no legal support for his assertions that: (1) defendants were required to keep records of their physical assessment of plaintiff for a specified period of time and failure to do so was evidence of gross negligence, and (2) defendants' alleged failure to administer a health assessment was a deviation from the American College of Sports Medicine (ACSM) guidelines and could therefore be used to impose tort liability on defendants. As observed by our Supreme Court:

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it. [*Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) (citations omitted).]

In sum, we affirm the trial court's summary disposition of plaintiff's gross negligence and willful and wanton misconduct claims because the evidence does not raise a factual question on whether defendants disregarded plaintiff's safety, showed an intent to harm plaintiff, or showed an indifference as to whether harm would result from the personal training activities.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ James Robert Redford