XU v GAY

Docket No. 237520. Submitted March 4, 2003, at Detroit. Decided June 24, 2003, at 9:20 A.M.

Junyi Xu, as personal representative of the estate of decedent Ning Yan, brought a wrongful-death and negligence action in the Oakland Circuit Court against Hiedi Gay, doing business as the Vital Power Fitness Center, after Yan died from injuries he sustained in a fall from a treadmill at the defendant's fitness center. The plaintiff alleged that Yan was flung against a wall that was a short distance behind the treadmill, while the defendant claimed that Yan was ill and fell down, hitting his head on the floor. No one saw Yan hit the wall or the floor. Before using the treadmill at the fitness center, Yan signed a purported release of liability. The defendant moved for summary disposition, arguing that the signed release precluded the plaintiff's claims of ordinary negligence. The trial court, Wendy L. Potts, J., agreed and granted the defendant summary disposition, but allowed the plaintiff to amend the complaint to include claims of gross negligence. The defendant moved for summary disposition regarding the gross-negligence and wrongful-death claims, arguing that there was no evidence supporting a claim of gross negligence. The trial court agreed and granted summary disposition of the gross-negligence claim, as well as the wrongful-death claim, ruling that the latter claim was derivative of the former claim. The plaintiff appealed.

The Court of Appeals *held*:

1. Following the Supreme Court's analysis in *Jennings v Southwood*, 446 Mich 125 (1994), the Court of Appeals adopted the definition of "gross negligence" as used in the government tort liability act, MCL 691.1401 *et seq.*, for purposes of analyzing a gross-negligence claim in the context of a contractual waiver of liability. Thus, the plaintiff was required to show "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(2)(c). Here, the trial court properly dismissed the gross-negligence claim because the plaintiff's evidence that the defendant ignored or was unaware of industry standards regarding safety setbacks for treadmills established only a basis for ordinary negligence, not gross negligence.

2. The purported release of liability did not clearly and unambiguously express the defendant's intent to disclaim liability for her own negligence. Rather, the release unambiguously stated that the defendant would not "assume" any responsibility for any injuries or sickness occurring as a result of entering the premises. This provision does not inform the reader that he is solely responsible for injuries incurred or that he waives the defendant's liability by relinquishing his right to sue, nor does it contain the words "waiver," "disclaim," or similar language. While such words are not necessary, at a minimum, a release should explicitly inform the reader regarding the effect of the release. The trial court erred in dismissing the plaintiff's ordinary-negligence claim. Similarly, the trial court erred in dismissing the plaintiff's wrongful-death claim because the decedent, had he survived, could have maintained an ordinary-negligence claim against the defendant, and, thus, the plaintiff may maintain such action. MCL 600.2922(1).

Affirmed in part, reversed in part, and remanded.

RELEASE — LIABILITY — GROSS NEGLIGENCE.

For purposes of analyzing a claim of gross negligence in the context of a contractual waiver of liability, "gross negligence" is defined as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury will result (MCL 691.1407[2][c]).

*Mark Granzotto, P.C.* (by *Mark Granzotto*), and *Donald L. Bramlage, Jr., P.C.* (by *Donald L. Bramlage, Jr.*), for the plaintiff.

*Coticchio & Associates, P.C.* (by *Stephen A. Coticchio*), for the defendant.

Before: HOEKSTRA, P.J., and SMOLENSKI and FORT HOOD, JJ.

SMOLENSKI, J. In this wrongful-death action, plaintiff Junyi Xu, as personal representative for the estate of decedent Ning Yan, appeals as of right the trial court's entry of two orders granting summary disposition in favor of defendant Hiedi Gay, doing business as Vital Power Fitness Center. We affirm in part, reverse in part, and remand.

I

In February 1999, Ning Yan went to defendant's fitness center to use a one-week complimentary pass. Yan visited the fitness center on February 16 and 18, 1999. Each time he visited he was required to sign-in and did so. At the top of the sign-in sheet was a paragraph that purportedly constituted a release of liability.

On February 18, 1999, while using one of the treadmills, Yan fell and hit his head. The head injury Yan sustained was severe, and he died on March 12, 1999. The parties dispute the circumstances of Yan's fall. Plaintiff contends that Yan stumbled while jogging and that the belt of the treadmill threw Yan back into the wall or the window ledge, which were only 2½ feet behind him. Defendant asserts that Yan was ill and fell down, hitting his head on the floor. No one actually saw Yan hit the wall, floor, or window ledge.

On July 22, 1999, plaintiff filed this suit alleging ordinary negligence by defendant, loss of consortium, and wrongful death. Defendant filed a motion for summary disposition under MCR 2.116(C)(7), arguing that the release at the top of the sign-in sheet that Yan signed precluded any claims of ordinary negligence against defendant. Following a hearing on May 10, 2000, the trial court agreed with defendant, and on May 19, 2000, the court granted defendant's motion regarding the claim of ordinary negligence, but also granted plaintiff leave to file his second amended complaint, which was actually filed on April 5, 2000, without the court's permission, and alleged a claim of gross negligence against defendant.[1]

---

[1] Plaintiff's first amended complaint was filed on February 16, 2000, and added Unisen, Inc., the manufacturer of the treadmill, as a defendant.

In July 2001, defendant renewed her motion for summary disposition to dismiss plaintiff's claims of gross negligence and wrongful death.[2] On September 12, 2001, following a hearing, the trial court concluded that reasonable minds could not differ and there was insufficient evidence to support a claim of gross negligence. Therefore, because the wrongful-death claim was derivative, both claims failed. On September 24, 2001, the trial court entered an order granting defendant summary disposition on plaintiff's remaining claims pursuant to MCR 2.116(C)(10).

II

Summary disposition against a plaintiff's complaint is proper if there is a valid release of liability between the parties. MCR 2.116(C)(7). A motion under MCR 2.116(C)(10) tests the factual support for a claim. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). We review de novo a trial court's decision on a motion for summary disposition. *Id.*

When reviewing a motion for summary disposition under MCR 2.116(C)(7), an appellate court accepts all the plaintiff's well-pleaded allegations as true, and construes them most favorably to the plaintiff, unless specifically contradicted by documentary evidence. *Sewell v Southfield Pub Schools*, 456 Mich 670, 674; 576 NW2d 153 (1998). The court must consider all affidavits, pleadings, depositions, admissions, and

The claims against Unisen were dismissed on October 4, 2001, pursuant to a settlement agreement, and it is not a party to this appeal.

[2] Defendant originally filed her second motion for summary disposition in June 2000. The trial court denied the motion in August 2000, with the option to renew the motion at the completion of discovery. The motion for summary disposition in July 2001 was actually the third such motion.

documentary evidence filed or submitted, and the motion should be granted only if no factual development could provide a basis for recovery. *Skotak v Vic Tanny Int'l, Inc,* 203 Mich App 616, 617; 513 NW2d 428, mod on other grounds *Patterson v Kleiman,* 447 Mich 429 (1994).

Similarly, when deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley,* 461 Mich 73, 76; 597 NW2d 517 (1999). If the evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood,* 461 Mich 109, 120; 597 NW2d 817 (1999).

III

Plaintiff first argues that the trial court erred in dismissing his gross-negligence claim pursuant to MCR 2.116(C)(10). Plaintiff asserts that, on the basis of the facts of this case, it was possible for a reasonable jury to conclude that defendant was grossly negligent, and, thus, summary disposition was inappropriate. We disagree.

Historically, for a claim of gross negligence to survive under Michigan common law, the plaintiff had to show that the defendant knew or should have known of the plaintiff's precedent negligence, and by the defendant's subsequent negligence caused injury to the plaintiff. *Gibbard v Cursan,* 225 Mich 311, 319; 196 NW 398 (1923); *Fuga v Comerica Bank-Detroit,* 202 Mich App 380, 383; 509 NW2d 778 (1993). Common-law gross negligence is not a higher degree of

negligence, but rather ordinary negligence of the defendant that follows the negligence of the plaintiff. *Jennings v Southwood*, 446 Mich 125, 130; 521 NW2d 230 (1994).

However, this common-law definition was rejected by our Supreme Court in *Jennings, supra*. The *Jennings* Court reasoned:

> *Gibbard's* formulation of gross negligence is really the doctrine of last clear chance in disguise; accordingly, its usefulness is dubious at best in light of our holding in *Petrove [v Grand Trunk W R Co*, 437 Mich 31, 33; 464 NW2d 711 (1991)].

> \*        \*        \*

> This is an instance in which precedent fails to promote justice. We have repudiated the traditional justification for *Gibbard's* gross negligence. Contributory negligence no longer holds a place in Michigan jurisprudence, compelling the demise of its attendant legal theories. "The reasons for the old rule no longer obtaining, the rule falls with it." *Montgomery v Stephan*, 359 Mich 33, 49; 101 NW2d 227 (1960). [*Id.* at 132-133.]

The *Jennings* Court acknowledged that it needed to adopt a new definition of gross negligence, and noted that most jurisdictions did not agree on an exact definition. *Id.* at 135-136.

*Jennings* involved the applicability of gross negligence in the context of the emergency medical services act (EMSA), MCL 333.20901 *et seq*. Therefore, instead of embarking on an analysis of the various standards used in different jurisdictions, the Court turned to the definition of gross negligence provided in the government tort liability act (GTLA), MCL 691.1401 *et seq*. Because the EMSA and the GTLA shared the same purpose—insulating employees from ordinary negligence liability, the Court adopted the GTLA

definition as the standard for gross negligence under the EMSA. *Jennings, supra* at 136-137. Gross negligence is defined in the GTLA as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* at 136. See also MCL 691.1407(2)(c).

This definition is used in many other Michigan statutes that provide limited immunity to certain groups, but allow liability for gross negligence. See MCL 257.606a (Michigan Vehicle Code); MCL 324.81131 and MCL 324.81124 (Recreational Use Act); MCL 500.214 (Insurance Code); MCL 600.2945 (Revised Judicature Act). Additionally, Michigan's standard jury instruction for gross negligence also incorporated the GTLA's definition. M Civ JI 14.10.

A contractual waiver of liability also serves to insulate against ordinary negligence, but not gross negligence. *Lamp v Reynolds*, 249 Mich App 591, 594; 645 NW2d 311 (2002). Thus, because the underlying purpose is the same, we adopt the statutory definition of gross negligence as defined in the GTLA and incorporated into the EMSA by the *Jennings* Court. Therefore, applying this definition, the question becomes whether reasonable minds could differ regarding whether defendant's conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to decedent. *Jennings, supra*; *Vermilya v Dunham*, 195 Mich App 79, 83; 489 NW2d 496 (1992). We find that reasonable minds could not.[3]

---

[3] We note that the parties and case law often use the terms "gross negligence" and "willful and wanton misconduct" interchangeably, and often the terms are misused or misapplied. *Thone v Nicholson*, 84 Mich App 538, 546-552; 269 NW2d 665 (1978). On appeal, plaintiff alleges that the trial court erred in dismissing his gross negligence *and/or willful and wanton misconduct* claim. However, these terms are separate concepts.

As evidence of defendant's gross negligence, plaintiff offered the testimony of Dr. Mark Rabinoff, an expert in recreational safety. Rabinoff testified with respect to the industry's standard of care regarding the safety distance behind treadmills, which should be a minimum of five feet. Rabinoff admitted that these are only recommended standards and are not mandatory. Rabinoff also stated that a similar accident was sure to happen again if the treadmill was not moved farther from the wall. However, we note that there was no evidence establishing that Yan actually hit his head on the wall, as opposed to the floor.

Defendant admitted that she knew a treadmill user could stumble while on the moving belt. However, defendant denied knowing that such a loss of balance could cause the user to be propelled backwards off the treadmill. Rabinoff testified that defendant's statement was "the dumbest statement I have ever heard from anyone I think in thirty years who had anything to do with the fitness field about a treadmill." Further, Rabinoff found defendant's lack of knowledge regarding safety standards for a fitness club to be incredulous, stating that defendant was "the worst, poorly educated owner/operator of a health club I have ever seen in twenty-five years . . . ." The evidence also indicated that the treadmills were placed in their current positions by the fitness club's previous owner. Defendant bought the club approximately one year before the accident, and did not move the treadmills.

---

*Id.* Common-law gross negligence referred to the last-chance doctrine. *Id.* While willful and wanton misconduct is established " 'if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does.' " *Jennings, supra* at 138, quoting *Burnett v City of Adrian,* 414 Mich 448, 455; 326 NW2d 810 (1982).

Plaintiff also asserted that the manufacturer recommended that the treadmill be placed at least five to six feet from a wall. However, plaintiff offered no admissible evidence to establish this point. *Maiden, supra* at 123. In fact, the evidence showed that the manufacturer of this treadmill had no setback recommendation in its operator's manual for the model of treadmill involved in this case.

Essentially, plaintiff argues that there were industry standards, that defendant should have known about these standards, and that defendant's ignorance of and failure to implement these standards constituted gross negligence. However, this establishes a case of ordinary negligence, not gross negligence. Evidence of ordinary negligence does not create a question of fact regarding gross negligence. *Maiden, supra* at 122-123. Viewing the evidence in the light most favorable to plaintiff, we find that reasonable minds could not differ; defendant's mere ignorance does not constitute conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to Yan. *Jennings, supra; Vermilya, supra.* Therefore, we hold that the trial court did not err in granting summary disposition in favor of defendant on plaintiff's gross-negligence claim.

IV

Plaintiff next argues that the trial court erred in dismissing his ordinary-negligence claim against defendant because the language at the top of the sign-in sheet did not constitute a release of liability. We agree.

The top of defendant's sign-in sheet reads as follows:

I understand that Vital Power Fitness Center reserves the right to revoke my membership for failure to respect the center's rules and policies. I also understand that Vital Power Fitness Center assumes no responsibility for any injuries and/or sicknesses incurred to me or any accompanying minor person as a result of entering the premises and/or using any of the facilities. I additionally understand that I am not entitled to [a] refund on my membership fee or daily visit. MEMBERSHIP AND DAILY FEES ARE NEITHER REFUNDABLE NOR TRANSFERABLE.

The parties do not dispute that Yan signed this sheet on February 16, 1999, his first visit, and on February 18, 1999, the day of his accident.

This Court outlined the applicable law in *Wyrembelski v St Clair Shores*, 218 Mich App 125, 127; 553 NW2d 651 (1996), stating:

"A release of liability is valid if it is fairly and knowingly made. The scope of a release is governed by the intent of the parties as it is expressed in the release. [*Adell v Sommers, Schwartz, Silver & Schwartz, PC*, 170 Mich App 196, 201; 428 NW2d 26 (1988) (citations omitted).]

"If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. If the terms of the release are unambiguous, contradictory inferences become 'subjective, and irrelevant,' and the legal effect of the language is a question of law to be resolved summarily." [quoting *Gortney v Norfolk & W R Co*, 216 Mich App 535, 540; 549 NW2d 612 (1996).]

A release is knowingly made even if it is not labeled a "release," or the releasor fails to read its terms, or thought the terms were different, absent fraud or intentional misrepresentation designed to induce the

releasor to sign the release through a strategy of trickery. *Dombrowski v City of Omer*, 199 Mich App 705, 709-710; 502 NW2d 707 (1993). A release is not fairly made if "(1) the releasor was dazed, in shock, or under the influence of drugs, (2) the nature of the instrument was misrepresented, or (3) there was other fraudulent or overreaching conduct." *Skotak, supra* at 618.

Plaintiff asserts that the meaning of the second sentence turns on the word "assume." Plaintiff contends that because "assume" means to voluntarily take on, the meaning of the sentence is that defendant would not voluntarily take responsibility for decedent's injuries, not that decedent was waiving his right to sue for injuries sustained. Plaintiff also argued below that the release was not effective because it did not contain the word "release" or another word with a similar meaning. Defendant argues that the language of the release is clear and subject to only one interpretation, i.e., defendant will not assume responsibility for any injuries and thus, will not be held liable for them. Therefore, we must first determine whether the language at the top of the sign-in sheet constitutes a release by unambiguously expressing defendant's intent to disclaim liability for her own negligence. "The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." *Cole v Ladbroke Racing Michigan, Inc*, 241 Mich App 1, 14; 614 NW2d 169 (2000).

In *Skotak, supra*, the plaintiff alleged that James Skotak died after suffering a heart attack while sitting in the defendant's steam room and that the defendant was negligent in not ensuring that its staff was properly trained in responding to such emergencies. The

decedent's membership agreement included a release that stated:

> "F. By the use of the facilities of Seller and/or by the attendance at any of the gymnasiums owned by Seller, the Member expressly agrees that Seller shall not be liable for any damages arising from personal injuries sustained by the Member or his guest in, on or about the premises of the said gymnasiums or as a result of their using the facilities and the equipment therein. By the execution of this agreement Member accepts full responsibility of [sic] any such injuries or damages which may occur to the Member or guest in, on or about the premises of the said gymnasiums and further agrees that Seller shall not be liable for any loss or theft of personal property. Member assumes full responsibility for any injuries, damages or losses which may occur to Member or guest, in, on or about the premises of said gymnasiums and does hereby fully and forever release and discharge Seller and all associated gymnasiums, their owners, employees and agents from any and all claims, demands, damages, rights of action, or causes of action, present or future, whether the same be known or unknown, anticipated, or unanticipated, resulting from or arising out of the Member's or his guests [sic] use or intended use of the said gymnasiums or the facilities and equipment thereof." [*Id.* at 618-619.]

This Court found that the release "clearly expresses defendant's intention to disclaim liability for all negligence, including its own." *Id.* at 619.

Similarly, in *Cole, supra* at 14, this Court held that the release the plaintiff signed "clearly expressed defendant's intention to disclaim liability for all injuries, including those attributable to its own negligence." In that case, the pertinent part of the release read:

> "The undersigned acknowledges that due to the unique combination of dangerous factors in the restricted area

associated with the stabling, exercising and training of a large number of horses, and the presence of tradespeople, jockeys, owner and other personnel in the area, there are inherent dangers in the restricted area which Ladbroke cannot eliminate after exercising reasonable care.

"In acknowledgment of the dangerous conditions and inherent risks associated with the restricted area, the undersigned hereby voluntarily assumes all risks of any injury that the undersigned may sustain while on the premises of Ladbroke and hereby waives all liability against Ladbroke, its officers, employees and agents." [*Id.* at 4-5.]

With these cases as guidance, we simply cannot read the purported release in the instant case as releasing defendant from liability stemming from her own negligence. We find that the language in the alleged release is unambiguous, and clearly states that defendant would not assume responsibility for "any injuries and/or sicknesses incurred to [sic] me or any accompanying minor person as a result of entering the premises and/or using any of the facilities." However, this provision does not inform the reader that he is solely responsible for injuries incurred or that he waives defendant's liability by relinquishing his right to sue, nor does it contain the words "waiver," "disclaim," or similar language that would clearly indicate to the reader that by accepting its terms he is giving up the right to assert a negligence claim. While such words are not necessary to create a release, *Klann v Hess Cartage Co*, 50 Mich App 703, 705; 214 NW2d 63 (1973), we believe that, at a minimum, a release should explicitly inform the reader regarding the effect of the release.[4] Therefore, we find

---

[4] We note that this Court held that the release in *Hall v Joseph*, unpublished opinion per curiam of the Court of Appeals, issued March 2, 1999 (Docket No. 206282), "plainly and unambiguously provided that AAA was

that the language at the top of defendant's sign-in sheet was insufficient to operate as a release, absolving defendant of any liability for her own negligence, and plaintiff is not barred from pursuing his ordinary-negligence claim against defendant. Accordingly, we hold that the trial court erred in granting defendant summary disposition in regards to plaintiff's ordinary-negligence claim.

V

Plaintiff also argues that the trial court erred in granting summary disposition on his wrongful-death claim because the release, even if valid, only precluded a cause of action by Yan, not his family members. We agree that plaintiff's wrongful-death claim is not barred, but for a different reason.

MCL 600.2922(1) provides:

---

not to be liable for any actions of the third-party contractors providing emergency road service," and, therefore, the plaintiffs were barred from seeking damages from AAA for the third-party's actions. The release provision stated:

> Understandably, in providing Emergency Road Service, AAA Michigan cannot and does not assume responsibility for the actions of independent service facility personnel. These facilities serve as independent contractors and are not employees or agents of AAA Michigan. Any damages resulting from their actions are the sole responsibility of the facility and should be reported immediately to the service facility owner before repairs are made.

The first sentence contains language similar to that at issue in this case—the defendant "does not assume responsibility . . . ." However, the release in *Hall* continues and provides clarification regarding the effect of this phrase—the third-party was solely responsible for any damages—while the alleged release in this case did not. We recognize that this case provides no precedential value, MCR 7.215(A)(1), and cite it only as an example of the additional language defendant could have included in her release to clearly convey that defendant was disclaiming liability.

> Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances that constitute a felony.

The language of the statute is clear. If a decedent could not have maintained the claim, his family members cannot recover under the wrongful-death statute. Indeed, this Court recently stated:

> "[T]he personal representative . . . who asserts a cause of action on behalf of a deceased stands in the deceased's place for all purposes [i]ncident to the enforcement of that claim, including the rights and privileges personal to the decedent in his lifetime."
>
> Even though the wrongful death act is for the benefit of certain persons, the cause of action is a derivative one whereby the personal representative of the deceased stands in the latter's shoes. [*Allstate Ins Co v Muszynski*, 253 Mich App 138, 142; 655 NW2d 260 (2002) (citations omitted).]

Here, because Yan, had he survived, would have been able to maintain an ordinary-negligence claim against defendant, on the basis of our decision above, plaintiff can maintain an action for damages on the basis of the ordinary negligence of defendant. Therefore, we find that the trial court erred in granting defendant summary disposition and dismissing plaintiff's wrongful-death claim.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.