# STATE OF MICHIGAN

# COURT OF APPEALS

---

ELIZABETH BUDROS,

        Plaintiff-Appellant,

v

WOMENS' FLAT TRACK ROLLER DERBY
ASSOCIATION and TRAVERSE CITY ROLLER
DERBY,

        Defendants-Appellees.

UNPUBLISHED
October 5, 2017

No. 334189
Grand Traverse Circuit Court
LC No. 2015-031272-NI

---

Before: TALBOT, C.J., and O'CONNELL and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, Elizabeth Budros, appeals as of right the trial court's grant of summary disposition under MCR 2.116(C)(7) (waiver) and (10) (no genuine issue of material fact) to defendants, Womens' Flat Track Derby Association (WFTDA) and Traverse City Roller Derby (TCRD). Budros alleged that the negligence or gross negligence of defendants caused her injury during a roller derby practice at TCRD's facility. We affirm.

## I. FACTS

TCRD is a roller derby league and was a member of WFTDA, which is a national association of women's flat track roller derby leagues. WFTDA published a safety protocol that establishes safety guidelines for its members. Compliance with the guidelines is a necessary condition for WFTDA insurance coverage, but compliance is not necessary for a league to be a member of WFTDA.

TCRD leased space at an outlet mall that it used as a roller derby rink. TCRD admitted that a portion of the wall outside of the roller derby track was within fewer than five feet of the track and thus did not meet WFTDA's safety guideline requiring five feet of clearance between a wall and the outside edge of the track. The purpose of the five-foot clearance was to create a buffer zone for skaters' safety because skaters aim to land outside the track when they fall.

Budros went to the TCRD rink and participated in a non-contact pace drill called "fast to fastest." Budros purchased WFTDA insurance before skating, which included a waiver of liability. TCRD's athletic director, Angela Stricker, showed Budros around the track. Stricker maintained that she pointed out the wall that was too close to the track edge, as well as other

-1-

potential hazards. Budros denied that Stricker did so. During the drill, the skater behind Budros fell, causing other skaters to pile up. When Budros swerved to avoid hitting the piled-up skaters, she hit the wall while trying to stop. As a result, she broke her arm.

Budros filed a four-count complaint that alleged one count of ordinary negligence and one count of gross negligence against each defendant. The trial court granted summary disposition on all claims. The trial court concluded that Budros's signed waiver extinguished her claims of ordinary negligence and that defendants' actions did not rise to the level of gross negligence.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review de novo a grant of summary disposition. *Xu v Gay*, 257 Mich App 263, 266; 668 NW2d 166 (2003). Summary disposition under MCR 2.116(C)(7) is proper if there is a valid release of liability. This Court accepts the plaintiff's allegations as true and construes them in the light most favorable to her, unless documentary evidence contradicts her claims. *Id*. When we review a grant of summary disposition under MCR 2.116(C)(10), we consider the pleadings and the evidence in the light most favorable to the nonmoving party, and we will affirm the grant of summary disposition if no genuine issue of material fact remains. *Id*. at 267.

### B. ORDINARY NEGLIGENCE

We affirm the trial court's grant of summary disposition against Budros's ordinary negligence claims because Budros's waiver was effective.

A valid waiver or release of liability defeats an ordinary negligence claim. *Id*. at 269. We examine the parties' intent to evaluate the validity of the waiver. *Paterek v 6600 Ltd*, 186 Mich App 445, 449; 465 NW2d 342 (1990). A valid waiver must be "fairly and knowingly made." *Id*. A release is invalid if the party signing the release was dazed or shocked, if the party requesting signature of the release misrepresents its contents, or if the circumstances reflect fraud. *Id*. We agree with the trial court that the language of the electronically signed waiver included in the WFTDA insurance purchase agreement was clear and extinguished Budros's ordinary negligence claims.

Budros argues that the release is invalid because it was part of an insurance purchase agreement and not a separate document clearly labeled a release. We rejected a similar argument in *Paterek*, in which the plaintiff described the waiver as part of a document that an official told him was an official team roster that he had to sign to play in the softball league. *Id*. at 449-450. The plaintiff's argument in *Paterek* that he did not know what the document contained did not invalidate the release. *Id*. at 450.

In the case at hand, the page showing Budros's electronic signature bears the caption "2014 Release and Waiver of Liability, Assumption of Risk, and Indemnity Agreement." In alternating ordinary and boldface font, the passage informed Budros about the risks of the activity and clearly stated that she assumed the risks of her own negligence. The passage additionally provided that Budros shall:

HEREBY RELEASE, DISCHARGE, AND COVENANT NOT TO SUE the sanctioning organization(s), their administrators, directors, agents, officers, members, volunteers, and employees, other participants, officials, rescue personnel, sponsors, advertisers, owners and lessees of Premises on which the Activity is conducted, (each of the forgoing shall be considered one of the RELEASEES herein) FROM ALL LIABILITY, CLAIMS, DEMANDS, LOSSES, OR DAMAGES ON MY ACCOUNT CAUSED, OR ALLEGED TO BE CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE, INCLUDING NEGLIGENT RESCUE OPERATIONS . . . .

Budros argues that the waiver was ambiguous and thus invalid because it did not name the WFTDA or the TRCD as releasees. We rejected a similar argument in *Dombrowski v City of Omer*, 199 Mich App 705, 707-708; 502 NW2d 707 (1993), in which we concluded that a release need not name each party because the waiver's general reference to all participants was sufficient. Similarly, the waiver in this case is comprehensive enough to cover both defendants without naming them specifically, particularly because Budros completed the document at the TCRD facility, which is dedicated to roller derby activity.

Budros contends that defendants misrepresented the nature of the document by instructing her to purchase insurance without advising her that the insurance purchase agreement contained a waiver. This Court rejected a parallel argument in *Paterek*. In that case, plaintiff argued that the recreational facility misrepresented the nature of the document as a team roster when it also included a waiver of rights. *Paterek*, 186 Mich App at 448-449. *Paterek* explained that misrepresentation connoted intent to deceive, but the plaintiff offered no evidence of deceitful intent. *Id*. at 449.

In this case, accepting as true Budros's claim that no one told her that the insurance agreement included a waiver of liability, Budros did not claim that defendants attempted to deceive her about the agreement's contents, conceal its contents, or prevent her from reading its contents before signing. Further, Budros did not claim that she would not have signed the insurance purchase agreement or that she would have declined to participate in the drill if she had been aware of the form's contents.

Finally, Budros's argument that defendants did not advise her that the contents of the insurance purchase agreement included a waiver amounts to an admission that she did not read the purchase agreement before signing it. Failing to read an agreement, in the absence of fraud or mutual mistake, does not render it invalid and unenforceable. *Paterek*, 186 Mich App at 450.

## C. GROSS NEGLIGENCE

We affirm the trial court's summary dismissal of Budros's gross negligence claims because the evidence does not raise a factual question on whether defendants disregarded Budros's safety. To avoid summary disposition on her gross negligence claims, Budros must show that defendants acted so recklessly that they demonstrated "a substantial lack of concern for whether" she suffered an injury. *Xu*, 257 Mich App at 269.

-3-

Accepting as true Budros's claim that Stricker did not warn her about the wall, Budros still has not shown a reckless disregard for her safety. Defendants did not contest that the placement of the wall with respect to the track edge violated the safety protocol. Indeed, defendants admitted that the wall was too close to the track edge. However, this knowledge alone does not constitute gross negligence. Defendants explained that it was not possible to move the wall or build the track differently because of the shape and size of the space. Accordingly, TCRD took other measures to mitigate the risk posed by the wall's proximity, including taping stripes on the floor where the outside referee lane was narrower by the wall, warning skaters about the wall, and having skaters shout "wall" to warn other skaters to avoid contact when approaching the area. We affirm the trial court's grant of summary disposition on Budros's gross negligence claim.

We affirm.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Colleen A. O'Brien