*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF RALPH BROWN, by VICTORIA
BROWN, Personal Representative,

UNPUBLISHED
August 27, 2019

Plaintiff-Appellee,

v

No. 340533
Oakland Circuit Court
LC No. 2016-152431-NO

SEAN WOLAN and JEFFREY VESCIO,

Defendants-Appellants.

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's order denying their motion for summary disposition pursuant to MCR 2.116(C)(7), based on governmental immunity. We affirm.

## I. BACKGROUND

This negligence suit arises from the death of Robert Brown (the plaintiff's decedent) who had suffered injuries months earlier when, during a transport from the residential facility to the ambulance, the gurney he was on tipped over.

Defendants are paramedics employed by the city of Southfield. On August 29, 2015, defendants were dispatched to an assisted living facility to transport plaintiff's decedent to Botsford Hospital. The decedent was paraplegic from a prior injury and was being transported to the hospital because of blood in his urine. Defendant Sean Wolan was assigned as the "lead" paramedic and defendant Jeffrey Vescio as the "driver." Vescio used a stretcher (also referred to as a "cot" or "gurney") mounted on wheels to convey the decedent from the facility to the ambulance. After exiting the facility, Vescio used one hand to pull the stretcher from the end, at the decedent's feet. Vescio carried a bag of medical supplies in the other hand. Wolan did not take control of the handles at the opposite end of the stretcher at the decedent's head, but instead stayed in the facility to fill out paperwork. Vescio pulled the stretcher alone down a ramp at the exit of the facility, onto a stamped concrete patio walkway. The walkway had a 90-degree turn

with a circle of stamped concrete at the corner. As Vescio pulled the stretcher, one of the rear wheels went off the walkway and onto the grass, which was approximately 2 inches lower than the concrete. The stretcher tipped downward. Vescio dropped his bag, turned around, and used his body and arms to prevent the stretcher from falling to the ground. Wolan saw what was happening and came to assist Vescio in returning the stretcher to the upright position onto the walkway.[1]

Vescio testified in his deposition that he did not believe that the decedent could have been injured because neither his body nor the stretcher hit the ground. He testified that he palpated the decedent's neck in the ambulance, but he did not find any sign of injury. According to Vescio, the decedent reported that he was not in pain. Wolan testified that he palpated the decedent's neck before the stretcher was taken into the ambulance. Wolan explained that his examination could not be seen on the security video because a tree obscured the view of the stretcher when he conducted the brief examination. Defendants' examinations were not documented in the decedent's Patient Care Record. Neither did Wolan document the tipping incident. Upon arriving to the Botsford Hospital Emergency Room (ER), defendants did not inform staff of the tipping incident. The ER staff learned of the incident from an employee at the assisted living facility who heard defendants ask the decedent if he was hurt. The employee heard decedent complain of pain in his neck. The decedent's MRI and CT scan imaging revealed multiple acute fractures in the vertebrae of the decedent's cervical and thoracic spine. Daniel Fahim, M.D., a neurosurgeon, performed surgery for open reduction and internal fixation of the vertebral fractures. During surgery, the decedent was found to have lytic lesions along his spine, suggesting metastatic cancer.

The decedent was discharged to a nursing facility from September 10 to 26, 2015. While there, the decedent developed pneumonia, "which further developed into full sepsis and infected decubitus ulcers." He was admitted to William Beaumont Hospital on September 26, 2015, and remained there until his death on October 10, 2015. He was diagnosed with acute hypoxic respiratory failure caused by Methicillin Resistant Staph Aureus pneumonia. The decedent's pneumonia and respiratory failure were identified as "healthcare associated." The decedent's death certificate listed three causes of death: (1) "respiratory failure," (2) "healthcare associated pneumonia," and (3) "metastatic lung cancer." The manner of death was recorded as natural.

Plaintiff brought this suit against defendants for negligence. Plaintiff alleged that defendants were grossly negligent for allowing the stretcher to tip, by failing to assess the decedent for injury after the fall, by failing to use spinal precautions before repositioning him on the stretcher, and by failing to truthfully report the incident to hospital personnel. Plaintiff's liability theory is that the decedent's vertebral fractures caused him to become bed-bound, which put him at risk of pneumonia. Although the decedent was terminally ill from lung cancer, plaintiff alleges that he died from pneumonia earlier than he would have died from the cancer.

Defendants moved for summary disposition on the ground that they were entitled to immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, because plaintiff could not prove that their alleged negligence constituted gross negligence, and because

---

[1] The incident was recorded by the facility's entryway security camera.

their conduct was not the proximate cause of the decedent's injuries and death. The trial court disagreed, concluding that questions of fact precluded summary disposition.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Pew v Mich State Univ,* 307 Mich App 328, 331; 859 NW2d 246 (2014). "When reviewing a motion for summary disposition under MCR 2.116(C)(7), an appellate court accepts all well-pleaded allegations as true, and construes them most favorably to the plaintiff, unless specifically contradicted by contrary evidence." *Xu v Gay,* 257 Mich App 263, 266; 668 NW2d 166 (2003). "The court must consider all affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties, and the motion should be granted only if no factual development could provide a basis for recovery." *Id*. at 266-267.

## III. ANALYSIS

Under MCL 691.1407(2), "[g]overnmental employees are immune from liability for injuries they cause during the course of their employment if they are acting or reasonably believe they are acting within the scope of their authority, if they are engaged in the exercise or discharge of a governmental function, and if their conduct does not amount to gross negligence that is the proximate cause of the injury or damage." *Love v Detroit,* 270 Mich App 563, 565; 716 NW2d 604 (2006). The GTLA defines "Gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "Evidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent." *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010). "The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent." *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). "The determination whether a governmental employee's conduct constituted gross negligence that proximately caused the complained-of injury under MCL 691.1407 is generally a question of fact, but, if reasonable minds could not differ, a court may grant summary disposition." *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007).

Defendants first argue that plaintiff failed to establish evidentiary support for her claim that their alleged conduct arose to the level of gross negligence. Plaintiff alleged that defendants were grossly negligent in allowing the stretcher to tip, in failing to assess the decedent for injury after the fall, in failing to use spinal precautions before repositioning him on the stretcher, and in failing to truthfully report the incident to hospital personnel.

With respect to allowing the stretcher to tip, plaintiff's expert John Everlove testified that "the minimum standard of care" for transporting a patient on a stretcher was to have two persons operating it while a patient was on it. He stated that the rear locking wheels were "not designed to replace personnel." He further testified that when a stretcher is maneuvered down a ramp, the first paramedic should have both hands on the stretcher and walk down backward, and the second paramedic should have both hands on the rear handles and walk down facing forward. One EMT holding the gurney with one hand is a substantial departure from that standard,

especially considering the plainly visible steep incline and significant drop off next to it. Defendant's assertion that expert testimony is inappropriate on the issue of gross negligence flies in the face of logic and case law. Therefore, for the purposes of the motion heard by the trial court there was evidence that the standard of care was breached. This alone, however would only be evidence of negligence. Ordinary negligence does not negate the immunity imbued upon the emergency medical personnel in this case. However, knowledge of the standard of care, breach of that standard, awareness of special circumstances, and a conscious decision not to follow the standard of care in combination, support a claim of gross negligence. Both EMTs can be presumed because of their certification or licensure to know the standard of care. No party disputes the essential facts that only one technician guided the gurney, that the incline was readily observable, or that the single technician guiding the gurney used one hand. Vescio, an experienced emergency technician, can be presumed to have been aware of the nature of the incline that he traversed, as the incline was open for view. He had the opportunity to perceive the weight of the patient, and he can be presumed to have been aware that the patient's weight would make it more difficult to control the gurney on that incline versus traversing a level surface with no turns. He chose to traverse the incline with a gurney bearing the patient with one hand, although he was aware that using two hands was a safer, preferred and recommended course of conduct.

The fact that Vescio and Wolan had previously used one hand while guiding patients' gurneys without negative consequence is a fortunate circumstance in this case for both the court and a trier of fact to consider. However, substantial certainty of injury is not necessary for conduct to be considered reckless. This is not a case held to the Worker's Disability Compensation Act (WDCA) intentional tort definition where tort liability can only be imposed where "An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." MCL 418.131(1). In this case, there is evidence of three intentionally unheeded standards of care intended to assure safe traverse of a patient on a gurney and evidence of the special circumstance of the transport occurring on open an obvious incline. The likelihood of a gurney going awry on an incline is foreseeable. Defendants' actions were inadequate and demonstrated a "substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

Concerning the failure to assess decedent's injury and failing to use spinal precautions, plaintiff criticizes defendants for assuming that the incident could not have harmed the decedent because neither he nor the stretcher hit the ground. Defendants respond that they palpated the decedent's neck, which was the only skill paramedics had at the time to evaluate a patient for cervical spine injury. The medical records bear no evidence that the decedent was palpated. In fact, the medical record reveals that both paramedics failed to report any incident until after a nursing facility employee reported both the incident and the decedent's unheeded complaints of neck pain. That same medical record includes the finding that multiple neck fractures were discovered on the MRI and CT taken immediately after the decedent's arrival at the hospital. Those fractures were discoverable by a palpation that at the least would have engendered a pain response. Thus, there is a reasonable inference that just as they failed to report the incident voluntarily, they failed to palpate. Failure to palpate in this circumstance is however, only evidence of negligence.

The failure to report the incident has additional import on the issue of whether the conduct of the defendants was grossly negligent. They had an undisputed duty to make such a report. Indeed, Vescio acknowledged in his deposition that the incident should have been reported. Vescio testified that Wolan was responsible for documenting the ambulance run and communicating information to the ER staff. Wolan explained that he did not report or document the incident because he did not believe the decedent had been injured. To the contrary, Everlove testified that the reporting of the incident, regardless of the paramedics' assessment of injury, was crucial to patient care at the hospital. Additionally, the veracity of Wolan's testimony regarding his belief that there was no injury is belied by his partner Vescio's description of the incident in his e-mail to his supervisors where he reported that, "the patient [was] hanging sideways reaching out while remaining belted onto the stretcher." A rational juror thus could believe that the EMTs did not assess the patient and failed to even report the indecent to those charged with the patient's medical care or record the incident in the transport record that would have been used by the hospital staff to inform patient care decisions. On this record, a reasonable juror could determine that the EMTs showed "a substantial lack of concern for whether an injury results." Defendants' failure in regards to reporting cannot be considered accidental.

The combination of these events present sufficient evidence to constitute a substantial lack of care or recklessness as to present a jury submissively claim-of gross negligence in avoidance of governmental immunity.

Defendants next argue that their conduct was not the proximate cause of the decedent's injuries. We disagree.

Proximate cause requires proof that "the harm caused to the plaintiff was the general kind of harm the defendant negligently risked." *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017) (quotation marks and citation omitted). Proximate cause "requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim." *Id*. at 65. This Court also must consider whether defendants' conduct was "the one most immediate, efficient, and direct cause of the injury." *Id*. (Citation omitted). "[N]onhuman and natural forces," such as the decedent's pneumonia and cancer, "cannot be considered 'the proximate cause' " under the GTLA, but "these forces bear on the question of foreseeability, in that they may constitute superseding causes that relieve the actor of liability if the intervening force was not reasonably foreseeable." *Id*. at 72.

The plaintiff satisfied her burden of establishing a question of fact regarding proximate cause. Plaintiff established an evidentiary basis to support a finding that the tipping of the stretcher was the proximate cause of the decedent's resulting neck fractures, pneumonia, and death. Even assuming that the decedent's body did not make contact with the ground, it is reasonably foreseeable that the uncontrolled motion of a person's neck can cause traumatic injury. Testimony from plaintiff's causation expert Dr. Werner Spitz established that immobilization during recovery is foreseeable, and pneumonia is a foreseeable consequence of immobilization. Dr. Spitz also testified that the decedent's lung cancer did not cause the decedent's immobilization and would not have killed him in October 2015. Dr. Daniel Fahim, the neurosurgeon who operated on the decedent's vertebrae, ruled out that the cervical vertebrae fractures were caused by the decedent's cancer because they were in different locations. A

reasonable trier of fact could find from this evidence that, but for the incident, the decedent would not have developed pneumonia and died six weeks later. Accordingly, the tipping incident was a proximate cause of the decedent's neck injury and the complication of pneumonia. A reasonable trier of fact could also conclude that Vescio's one-handed maneuvering of the stretcher was a proximate cause of the accidental tipping because a second person managing the head-end of the stretcher could have prevented the rear wheel from leaving the pavement. Defendants' conduct could thus be characterized as the unsafe action of moving the stretcher without control of the head-end, or as the failure to use a method that would have prevented the stretcher wheel from going astray. Under either characterization, the plaintiff established but-for-causation between moving the stretcher without a second person controlling the head-end end of the stretcher, and the tipping and subsequent injury to the decedent.

There is, however, no evidence that the failure to promptly report the incident led to injury. The decedent arrived at the hospital at 12:41 a.m. The stretcher incident was documented at 12:54 a.m. Dr. Fahim testified that this delay in receiving the information did not affect the decedent's treatment or outcomes. Accordingly, there is no factual causation with respect to plaintiff's allegations of defendants' omissions in reporting the incident.

Regardless of the issue to report, defendants were not entitled to summary disposition because plaintiff established an issue of fact concerning whether defendants' conduct rose to the level of gross negligence under the GTLA and as to whether defendants' actions were a proximate cause of decedent's death.[2]

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan

---

[2] Defendants have not offered evidence disputing the fact that the fracture led to the decedent's immobilization that in turn, made the decedent pre-disposed to pneumonia that may have hastened his demise. However, that issue is not before this panel.