*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW BURCHARD,

        Plaintiff-Appellant,

v

TREETOPS ACQUISITION COMPANY, LLC, a
Limited Liability Company d/b/a TREETOPS,
TREETOPS RESORT, and/or TREETOPS GOLF,

        Defendant-Appellee.

UNPUBLISHED
March 14, 2024

No. 364021
Otsego Circuit Court
LC No. 2021-018503-NO

Before: PATEL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Plaintiff Matthew Burchard appeals as of right the trial court's order granting defendant Treetops Acquisition Company, LLC's motion for summary disposition pursuant to MCR 2.116(C)(7) (release) and (C)(10) (no genuine issue of material fact). On appeal, plaintiff argues that the release he signed was invalid and, alternatively, that his gross-negligence claim should be allowed to proceed to trial. We affirm.

## I. FACTS

On May 4, 2019, plaintiff was with about fifteen other golfers as part of a bachelor party. That afternoon, plaintiff and the others were at the "Threetops" golf course, which is one of the courses offered by defendant.[1] Plaintiff had never played Threetops before and had not consumed alcohol that day. Before being allowed on the course, plaintiff was required to sign a "Golf Cart

---

[1] Somewhat confusingly, "Treetops" is the name of the overall resort, which includes several golf courses. One of those courses is named "Threetops," as it is a Par-3 course.

Rental Agreement," which is a standardized form that defendant requires both drivers and passengers of a golf cart to sign before golfing.[2] The agreement includes the following release:

> I am aware of the dangers of golf and operating a golf cart, generally, including without limitation, the risks of being struck by a golf ball or golf cart, golf carts colliding, or the golf cart overturning (the "dangers"). I understand that the risk of the dangers may be increased due to the extreme terrain at Treetops Resort including the hills, slopes and grade changes. . . . I assume the inherent and extraordinary risks of the dangers. I hereby waive any claim I have or may hereafter have for injuries to my person or property arising out of the dangers and release [defendant] . . . from any and all liability in any way related to the dangers.

In addition, a "starter" advised the group about the hills on the third and seventh holes and generally informed the group "[t]hat you brake. Don't lockup the brakes. If you lockup the brakes, use your gas. That will release the brake."

Unfortunately, plaintiff lost control of his golf cart on the third hole while descending the hill from the tee boxes to the green. He described the accident in his deposition as follows:

> We get on the cart path and we're going down to the green. I remember going down the hill and the golf cart started going a little faster than I like. So I applied the brakes. The brakes didn't slow the golf cart down. So I applied the brakes harder. Golf cart still didn't slow down. Then I put all my body weight on the brake pedal and then the golf cart still did not slow down. And I remember a sharp left turn coming up. And I remember waking up in the hospital a few days later.

Plaintiff added that he tried applying the parking brake as well, but doing so was unhelpful because "it felt like one of the wheels were catching, but then would give way." Plaintiff was subsequently informed that he was thrown from the golf cart and that the golf cart flipped and landed on him. He said that the weather conditions that day were "sunny" and that he had no reason to believe that the cart path was wet.

Plaintiff sued defendant in November 2021. In Count I, plaintiff sought relief for negligence and premises liability, asserting, in relevant part, that the cart path was defectively designed and unreasonably increased the chances of injury. In Count II, plaintiff sought relief for gross negligence, essentially asserting that the circumstances were so egregious as to warrant that claim.

Defendant moved for summary disposition under MCR 2.116(C)(7) and (C)(10). Defendant argued that summary disposition of the ordinary-negligence and premises-liability claims was warranted under MCR 2.116(C)(7) because plaintiff signed a release that waived those claims, and summary disposition of the gross-negligence claim was warranted under MCR 2.116(C)(10) because the facts of this case do not amount to gross negligence. In support of the

---

[2] Defendant generally prohibits golfers from walking or using a pull cart on the Threetops golf course.

latter argument, defendant introduced evidence indicating that there is a sign near or at the top of the hill on the third hole that reads, "BRAKE" and "STEEP GRADE"; there is a speed bump on top of the hill; the golf cart in question was inspected about a week before the accident and found to have no mechanical issues; the golf cart was inspected shortly after the accident and again found to have no mechanical issues; and the starter warned plaintiff and the rest of his group to brake on the third hole while descending the hill.

Plaintiff responded with two expert reports indicating that the hill was excessively steep under both industry standards and the recommendations of the golf-cart manufacturer, and that defendant was negligent in other respects. The report prepared by Kristopher Seluga of Technology Associates, LLC, stated, in relevant part:

> The subject path, in the area leading to the sharp left curve, has a maximum grade of approximately [19 degrees] (34%) with a significant length exceeding [14 degrees] (25%). . . .
>
> The design of the subject car path was deficient and violated numerous industry recommendations as well as the warnings in the E-Z-Go TXT golf car manual. For example, the National Golf Car Manufacturers Association (NGCMA) published the "Golf Course Safety Guidelines," in 2006 which recommended that golf cars not be allowed to drive on paved surfaces steeper than 25% [14 degrees] . . . . The Owner's Guide for the subject E-Z-Go TXT fleet gasoline golf car states: "Never drive vehicle up, down or across an incline that exceeds [14 degrees] (25% grade)." Therefore, the Tree Tops golf course was violating the E-Z-Go warnings in the manual for the subject car by instructing golfers to drive down the subject hill, which significantly exceeded a 25% grade in the area near the entrance to the left curve where drivers were likely to attempt to slow down in order to safely negotiate the curve. . . .

The report prepared by Edward E. Wankel of Leisure Services Associates Inc., stated, in relevant part:

> These defendants failed to install protective fencing or appropriate guard rails at the sharp left turn along the cart path; failed to make appropriate alterations to the golf car pathway to reduce the slope from beyond 25% /or 33.65% as it presently exists; failed to meet proper radiuses of the curve of this sharp turn; failed to erect appropriate warning signs that would have more efficiently warned of the very sharp turn ahead and the dangerous steep slope; failed to warn golf car operators to "Slow Down"; failed to establish a proper risk management program; failed to engage in proper maintenance procedures; and failed to engage in proper safety inspections on the golf courses grounds, specifically in and around the the [sic] cart path at issue herein at hole number three.

The trial court heard the motion on November 8, 2022. Following arguments, it ruled in favor of defendant on the record, reasoning as follows. First, the release that plaintiff signed before golfing was valid, as it had the parties' mutual assent and was not induced by fraud or mutual mistake. As a result, defendant was entitled to summary disposition of the ordinary-negligence

and premises-liability claims under MCR 2.116(C)(7). Second, the trial court ruled that plaintiff failed to establish a question of material fact regarding gross negligence:

> I'm compelled based upon the information that's been supplied to find that an objective observer must and would conclude that Treetops exhibited not reckless conduct, but conduct that was appropriately tailored for many reasons in seeking to warn, and in seeking to advise patrons of the risks. Risks which it even explained where heightened due to the extreme terrain.
>
> For example, evidence offered by defendant demonstrates that one week prior to the accident at issue the golf cart in question underwent a full maintenance inspection. That included a full review of mechanics including brake shoes, brake cable and the parking brake, along with a performance test. According to that inspection no, no issues were identified.
>
> In addition to the pre-accident inspection the starter in this case, Joseph Tyre, testified during his deposition that he specifically warned all groups, but specifically plaintiffs group, to use the brakes and gas when going downhill to make sure that the brakes didn't lock up, which is exactly what plaintiffs expert even suggested should have been done.
>
> He also testified that he told them to be careful on hole number three where the accident occurred, and provided each customer, including plaintiff with the golf cart agreement. Which as noted contains specific warnings regarding a variety of dangers, including the danger of the cart overturning, and that the risks are heightened due to the extreme terrain.
>
> In addition, defendant's other employee, one in particular McKinley, testified as his deposition that the bag drop employees are trained to inspect all carts before their set up on the staging area for guests to use, and that no bag drop employee flagged plaintiffs cart, or noted anything wrong with it, or it would have never been put into that staging area for use.
>
> * * *
>
> Even taking into account both of the proffered expert reports of Leisure, Leisure Services and the other report from Mr. Seluga, the court finds insufficient evidence of gross negligence in order to defeat the summary disposition motion.
>
> By way of example, much of the Leisure Services report alleges that defendant was aware of the prior accidents resulting from the steep grade. That defendant was aware, or should have been aware of the golf cart manufacturer's recommendation, and that the defendant knew, or should have known of industry standards prohibiting elevation changes.
>
> But it's correctly cited and noted by defendant in the motion and brief ignorance of industry standards and or recommendations, including manufacture

recommendations, or failure to implement them does not amount to gross negligence under Xu versus Gay. . . .

On November 23, 2022, the trial court entered an order dismissing plaintiff's ordinary-negligence and premises-liability claims under MCR 2.116(C)(7), and dismissing his gross-negligence claim under MCR 2.116(C)(10).[3]

Plaintiff now appeals.

## II. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition is warranted under MCR 2.116(C)(7) for a "release." "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Maiden*, 461 Mich at 119. Summary disposition is warranted under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact." "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120.

"The interpretation of a release presents a question of law that this Court reviews de novo." *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 374; 838 NW2d 720 (2013).

## III. DISCUSSION

Plaintiff argues that the trial court erred by ruling that his release was valid, so his ordinary-negligence and premises-liability claims should proceed to trial. Plaintiff alternatively argues that he established a genuine issue of material fact as to whether defendant was grossly negligent, so at a minimum, that claim should proceed to trial. We disagree with both of plaintiff's contentions.

### *Release*

"[I]t is not contrary to this state's public policy for a party to contract against liability for damages caused by ordinary negligence." *Paterek v 6600 Ltd*, 186 Mich App 445, 448; 465 NW2d 342 (1990). This principle applies to premises liability as well. See *Skotak v Vic Tanny Int'l, Inc*, 203 Mich App 616, 618-619; 513 NW2d 428 (1994). "As with other contracts, the validity of a contract of release turns on the intent of the parties." *Paterek*, 186 Mich App at 449. "To be valid, a release must be fairly and knowingly made." *Id*. "A release is not fairly made and is invalid if (1) the releasor was dazed, in shock, or under the influence of drugs, (2) the nature of the instrument was misrepresented, or (3) there was other fraudulent or overreaching conduct." *Id*.

---

[3] The trial court also dismissed plaintiff's breach-of-contract and fraud claims, but plaintiff does not challenge that aspect of the trial court's ruling on appeal.

Plaintiff does not dispute that the release, if valid, would amount to a waiver of his ordinary-negligence and premises-liability claims. However, he argues that the release is invalid because (1) there was no mutual assent on behalf of defendant, as a representative of defendant did not sign it; (2) the release was not "knowingly" signed by plaintiff because he was not informed about safe braking, the fact that the golf course did not comply with national safety standards, and the fact that the terrain ahead was dangerous; and (3) it was not "fairly" signed by plaintiff because he was not informed that he would be required to sign the release until after he paid for the golf round, and defendant would not allow him to avoid the release by walking or using a pull cart. None of these arguments have merit.

With regard to the first argument, this Court has specifically rejected the contention that a release "lacks mutuality of agreement" because it was not signed by the other party. *Hall v Small*, 267 Mich App 330, 333; 705 NW2d 741 (2005). "[A] release need not be signed by the party being released if it shows on its face that it was not intended to be signed by the party obtaining the release." *Id*. at 333-334 (quotation marks and citation omitted). The release in this case clearly shows on its face that it was not intended to be signed by a representative of defendant to be valid.

With regard to the second argument, the starter informed plaintiff and the other golfers that the golf course had steep hills and to brake while descending those hills. In addition, the release itself referred to "extreme terrain at Treetops Resort including the hills, slopes and grade changes." Thus, defendant warned plaintiff both verbally and in writing about the general condition of the golf course, so the release was "knowingly" provided. Even if plaintiff did not read the release before signing it, his failure to do so would not warrant rescission of the release. See *Dombrowski v City of Omer*, 199 Mich App 705, 710; 502 NW2d 707 (1993). "Failure to read a contract document provides a ground for rescission only where the failure was not induced by carelessness alone, but instead was induced by some stratagem, trick, or artifice by the parties seeking to enforce the contract." *Id*. (cleaned up).

With regard to the third argument, that there was other fraudulent or overreaching conduct, while it is true that plaintiff was not presented with the release until after he paid for the golf round, and that he was not allowed to walk or use a pull cart, these facts do not compel the conclusion that the release was "unfairly" provided. There is nothing in the record to suggest that plaintiff would have been unable to obtain a refund if he refused to sign the release or that defendant somehow pressured him into signing the release despite his unwillingness to do so. Nor has plaintiff identified any other egregious facts. In short, the facts preceding the golf round do not constitute "fraudulent or overreaching conduct." See *Paterek*, 186 Mich App at 449.

For these reasons, the release was valid and waived plaintiff's ordinary-negligence and premises-liability claims.

*Gross Negligence*

"It is well established in this jurisdiction that, although a party may contract against liability for harm caused by his ordinary negligence, a party may not insulate himself against liability for gross negligence . . . ." *Lamp v Reynolds*, 249 Mich App 591, 594; 645 NW2d 311 (2002). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Dougherty v City of Detroit*, 340 Mich App 339, 346; 986 NW2d 467 (2021)

(quotation marks and citation omitted).[4]  "Gross negligence suggests almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks."  *Id.* at 350 (quotation marks and citation omitted).  "Evidence of ordinary negligence or simply alleging that an actor could have done more is insufficient to meet the standard for gross negligence . . . ."  *Id.* (quotation marks and citation omitted).  In other words,

> [s]imply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result.  However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness.  Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent.
>
> The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks.  It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).]

In *Xu v Gay*, 257 Mich App 263; 668 NW2d 166 (2003), the decedent was injured when he fell backwards while using a treadmill at a fitness center.  *Id.* at 265.  His estate argued that the fitness center was grossly negligent because the wall was only 2 ½ feet behind the treadmill, whereas it should have been at least five feet behind the treadmill under industry standards.  *Id.* at 270.  This Court disagreed that the fitness center was grossly negligent, reasoning:

> Essentially, plaintiff argues that there were industry standards, that defendant should have known about these standards, and that defendant's ignorance of and failure to implement these standards constituted gross negligence.  However, this establishes a case of ordinary negligence, not gross negligence.  Evidence of ordinary negligence does not create a question of fact regarding gross negligence.  Viewing the evidence in the light most favorable to plaintiff, we find that reasonable minds could not differ; defendant's mere ignorance does not constitute conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to Yan. [*Id.* at 271 (citations omitted).]

In this case, the facts show that defendant displayed some level of concern for the safety of its customers.  The golf cart at issue, as with all other golf carts, was inspected for safety about a week before the accident occurred and found to have no problems.  The fact that the golf cart was examined post-accident and found to have no operational defects seemingly confirms the

---

[4] This definition of "gross negligence" is set forth by MCL 691.1407(8)(a) of the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq.*  However, in *Xu v Gay*, 257 Mich App 263, 269; 668 NW2d 166 (2003), this Court applied the GTLA definition to "[a] contractual waiver of liability."

earlier inspection. In addition, the starter warned golfers such as plaintiff to drive carefully on the hills and apply the brakes, the liability waiver expressly includes such warnings, and the third hole has a speed bump and a warning sign at the top of the hill. Given the high standard for establishing gross negligence, "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks," *Tarlea*, 263 Mich App at 90, it is difficult to conclude that defendant satisfied this standard in light of its multiple precautionary measures.

Plaintiff does not dispute that defendant took steps showing a concern for golf cart safety, but observes that the slope of the hill exceeded both industry standards and the guidelines set forth in the golf cart operational manual. In addition, plaintiff argues, the record indicates that there were at least a few incidents or accidents on the third hole before plaintiff's mishap, which suggests that defendant had knowledge that the third hole could be made safer. However, accepting plaintiff's contentions, "ignorance of and failure to implement" industry standards "establishes a case of ordinary negligence, not gross negligence." *Xu*, 257 Mich App at 271. Moreover, to the extent that defendant also ignored or failed to implement the slope recommendation in the operational manual, that fact is not so egregious as to outweigh all of the other precautionary measures implemented by defendant to ensure the safety of its golfers. This perhaps is best illustrated by the fact that the vast majority of golfers safely, including those participating in the bachelor party of plaintiff, drove through the third hole without incident. While the record does indicate that the third hole had some unspecified number of accidents, the record does not indicate whether those accidents actually involved injury and, overall, the number is negligible in light of the thousands of golfers that play the golf course each year. Simply put, the facts of this case are consistent with ordinary negligence, not gross negligence.[5]

## IV. CONCLUSION

The trial court did not err by concluding that the release is valid, nor did the trial court err by granting defendant summary disposition of plaintiff's gross-negligence claim. We affirm.

/s/ Sima G. Patel
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

---

[5] Plaintiff directs our attention to *Dippel v Treetops Resort*, Otsego Circuit Court No. 19-17905-NO. In that case, the plaintiff was injured while descending a hill on a different golf course operated by defendant. The trial court, which was a different trial judge from the instant case, ruled that the plaintiff established a genuine issue of material fact as to gross negligence. We acknowledge, that at first glance, our decision appears to be inconsistent with *Dippel*. However, we note that the golf cart at issue in *Dippel* was apparently manufactured by a different company than the golf cart at issue in this case. According to the trial court's opinion in *Dippel*, "the manual recommended partially pressing the accelerator on the cars when descending hills . . . ." Plaintiff has not identified a similar warning in the operational manual in the case before us.