*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EARTHCOM, INC,

Plaintiff-Appellant,

v

INTEGRATED CONSTRUCTION SERVICES INC,
JEFFREY CLARK, RODNEY CAIN and LISA
CLARK,

Defendants-Appellees.

UNPUBLISHED
December 22, 2020

No. 348504
Ingham County Circuit Court
LC No. 17-000755-CB

Before: BOONSTRA, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Plaintiff Earthcom, Inc. (Earthcom) appeals by leave granted[1] the trial court's order granting in part defendant Integrated Construction Services, Inc.'s (ICS) and defendant Jeffrey Clark's (Clark) motion for summary disposition under MCR 2.116(C)(10).[2] Earthcom challenges the portion of the trial court's order holding that Earthcom is not entitled to recover consequential damages from ICS for any breach of a subcontractor agreement between the two companies. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Earthcom and ICS are both telecommunications companies. In the summer of 2016, ICS served for approximately two months as a subcontractor for Earthcom. The subcontractor

---

[1] See *Earthcom, Inc v Jeffrey Clark*, unpublished order of the Court of Appeals, entered August 30, 2019 (Docket No. 348504).

[2] Defendant Rodney Cain (Cain) is an owner of ICS. Defendant Lisa Clark is Jeffrey Clark's wife and a former employee of Earthcom. Claims against these two defendants were added to Earthcom's second amended complaint filed in 2018; those claims are unrelated to the issues in this interlocutory appeal. Although all defendants have joined in responding to Earthcom's claim of appeal, none of the issues before us for review involve either Cain or Lisa Clark.

agreement (SCA) between Earthcom and ICS contained a "no-poaching" clause stating that ICS was not to hire Earthcom's employees for a certain period of time. Michael Harvey (Harvey), ICS's human-resources director, signed the SCA on behalf of, and at the direction of, ICS's then-president, Jim Mandersheid (Mandersheid). Harvey testified at his deposition that he did not read the SCA before signing it because he relied on Mandersheid having reviewed it. Mandersheid then left the company, and Harvey became the president of ICS. In August 2017, Harvey hired Clark, then employed by Earthcom, to work for ICS, after Clark submitted a proposal to boost ICS's business by hiring experienced cellular-tower technicians. Harvey later hired five cellular-tower technicians from Earthcom to work for ICS.

Earthcom sued Clark and ICS,[3] alleging, among other things, a violation of the no-poaching clause of the SCA. Earthcom alleged that Clark had, in his work with Earthcom, established contacts with various cellular companies that he was then able to use, unlawfully, for the benefit of ICS.

In alleging a violation of the SCA, Earthcom relied on Paragraphs 6 and 8 of that agreement. Paragraph 6 states:

> Sub-contractor and its employees agree to be bound and abide by the term of any confidentiality/nondisclosure agreement(s) that may have been executed with Earthcom. . . . If no such agreement is in place Parties agree to treat any information as "confidential" that would reasonably be considered as such and shall treat it with the same degree of care as they treat their own confidential information. Further, Sub-contractor agrees that at anytime [sic] Sub-contractor is performing services for Earthcom, Sub-contractor shall not perform or attempt to divert the same or similar services it is performing for Earthcom from the end customer nor will Sub-contractor interfere with any business relationship between Earthcom and any other person/party within the same market it is performing services for Earthcom. Notwithstanding the above, Sub-contractor will not be prohibited from communicating with or providing services to any customer if it can reasonably demonstrate it had a pre-existing relationship within the same market that services are performed for Earthcom in the past year. Further, *during the term of this Agreement and for a period of (2) years thereafter, Sub-Contractor shall not directly or indirectly employ, offer employment to or solicit the employment of any of Earthcom's personnel* and both Parties agree not to disclose, to any third party, any confidential information, including but not limited to, processes, trade-secrets, technical information, know-how, plans, pricing, financial information, customers, suppliers and the like, of the other Party without the express written consent of the non-disclosing Party. [Emphasis added.]

Paragraph 8 provides for recoverable damages, but further states, in pertinent part:

---

[3] Earthcom initially filed separate suits against Clark and ICS, but they were consolidated in the trial court prior to the filing of dispositive motions. The other defendants were added by amended complaint as discussed.

b. Neither Sub-contractor nor Earthcom/Owner shall be liable for those consequential damages which consist of lost profits or loss of goodwill: provided, however, that the limitations set forth in this Section b shall not apply to, or in any way limit:

* * *

ii. Sub-contractor's liability to Earthcom, Owner, or Owner Affiliate for consequential damages constituting lost profits or loss of goodwill which arise from Sub-contractor's grossly negligent or willful acts or omissions.

On October 17, 2018, Earthcom filed a motion for partial summary disposition under MCR 2.116(C)(10). In support, Earthcom submitted ICS's responses to Earthcom's requests for admission, in which ICS admitted that Clark and five other former employees of Earthcom now worked for ICS. Earthcom contended that these admissions established a clear breach of the SCA. Earthcom stated that it "lost the majority of its wireless communications team and several millions of dollars in revenue." On November 13, 2018, ICS and Clark filed a motion for partial summary disposition under MCR 2.116(C)(10), seeking dismissal of two of the claims against Clark and dismissal of the claims against ICS, or in the alternative a determination that Earthcom had no claim for monetary damages against ICS. Relevant to this appeal, defendants argued that Earthcom's claimed damages for breach of the SCA were all based on lost profits or lost goodwill and were, therefore, barred by Paragraph 8(b) of the SCA. Defendants asked the trial court to determine that Earthcom had "no claim for monetary damages" against ICS.

Earthcom responded to defendants' motion, arguing that Harvey had admitted to signing the SCA without having read it and had further admitted that if he had read it, he would not have hired Clark or the other former employees of Earthcom because the hiring would have been in breach of the SCA. Earthcom cited Paragraph 8 of the SCA and argued that ICS's "gross negligence in failing to read a seven-page contract before signing it cannot, and does not, exculpate it for violating the terms of that contract." Earthcom attached to its responsive brief additional excerpts from Harvey's deposition. Harvey testified that he did not read the SCA before signing it because he assumed that Mandersheid "had already gone through the document and negotiated its terms." He testified that he was "signing on [Mandersheid's] behalf for the company." Harvey was asked the following question:

If you—let's assume for the sake of argument that hiring Jeff Clark was a breach of paragraph 6 of the Subcontractor Agreement . . . . If you had known at the time you were hiring him that that would have been a breach of that contract, would you have nonetheless hired him?

Harvey answered, "No." He was then asked, "Would your answer be the same with regard to any climbers [i.e., crew members/technicians] that left Earthcom to come to ICS?" He answered, "Yes. I would not have hired them." Harvey later reiterated that if he had read paragraph 6 of the SCA, he would not have hired Earthcom's crew members. Harvey admitted that he did not consult with an attorney before signing the SCA. He admitted that because he had not read the agreement, he did not know what its terms were and did not know the legal implications of any violation of its terms.

Defendants filed a reply brief on November 29, 2018. Defendants contended that no gross negligence had occurred and argued that, according to caselaw, mere "ignorance" does not rise to the level of gross negligence. They argued that the alleged breach of the SCA occurred merely because Harvey, after relying on Mandersheid's review, had been unaware of the terms of the agreement. They stated that Harvey, when signing the contract, had simply been performing a ministerial act at the direction of the then-president of ICS. Defendants contended that the actions of ICS were not so reckless as to demonstrate a substantial lack of concern regarding whether an injury would result.

After two hearings on the cross-motions for partial summary disposition, the trial court granted defendant's motion, stating:

[W]e . . . have to determine . . . whether the exceptions apply to the limitation of damages clause . . . . It has an exception both for gross-negligence and for willful acts. So, with regard to gross-negligence, I have to conclude that the cases cited by the plaintiff not only are not binding but they're simply not persuasive to this [c]ourt regarding gross-negligence and failing to read a contract. Well, they may indeed stand for the proposition, the bare proposition that it is gross-negligence to fail to read a contract, [but] you have to put that in some sort of context. And they're dealing with a person who's trying to disavow the contract. *There is no authority that's been presented to the [c]ourt that failure to read a contract is gross-negligence* [sic] *for the application of it that we have here*. So, you know, ICS can't avoid the no-poach provision by saying we didn't read the contract. That's what those cases would stand for.

But . . . that's far different than saying that the limitation of damage provision exception applies because ICS didn't read the contract and there's just no authority for that and I'm not one to as a lowly trial court to, you know, forge new ground and make law where there is none. I go by what authority do you have for that? And there is no authority that would apply in this situation as far as the language of the section 8[b] limitation of damages provision. *Mr. Harvey's failure to read the contract or anyone's failure to read the contract at ICS is under, under current law as we have it, it is a mistake. It's inadvertence. It is ordinary negligence. But, gross-negligence as our law is requires some kind of reckless disregard. And again, there is no authority for concluding that this is a matter of reckless disregard that would trigger the exception for the limitation of damages clause*. So, I have to reject that argument.

*There is also an exception for willful acts. And the plaintiff points to a number of acts that Jeff Clark is alleged to have done*; emailing the 90[-]day action plan, providing ICS with his plans to facilitate future work for them, emailing to himself the plaintiffs [sic] customer list and training documents. But, those are Jeff Clark's actions. And as a matter of fact for all or most of those, he didn't even work for ICS, he may have for some of those accepted employment *but he was still on the payroll at Earthcom and . . . he's not a party to this sub-contractor agreement either. So . . . it's very difficult to conclude that he's committed a willful act, that would again trigger this exception in the limitation of damages clause in [the] contract between Earthcom and ICS.*

Now . . . plaintiff says that ICS has some kind of vicarious liability. But, I have to reject that argument as well because to me that would present an entirely new and novel application of vicarious liability. Vicarious liability applies as a tort concept to hold an employer liable for the torts of the employee. And for one thing again, Jeff Clark wasn't an employee during some of this but to the extent that he did become an employee there's no vicarious liability for contractual obligations.

And finally, and this point is not lost on the Court, the plaintiff has pointed to the fact that Mr. Harvey and apparently, nobody at ICS even read the contract to know that there is a no-poaching provision. *So, yes, a willful act has to be an act that is knowingly a willful act. We could even say implies malice. But, even if we leave malice out of it, a knowing, willful act can hardly be the, there's no evidence of that here because Mr. Harvey and no one disputes this and there's no evidence . . . to the contrary, didn't read the contract to know that there was a no-poaching provision. So, he couldn't have been, there couldn't have been any willful act in violating the no-poaching provision.* [Emphases added.]

The court ordered that "ICS's motion seeking a determination that Earthcom is not entitled to recover 'consequential damages which consist of lost profits or loss of goodwill' as provided in § 8(b) of the Sub-Contractor Agreement between Earthcom and ICS is granted to the extent those damages arise out of a breach of the Sub-Contractor Agreement."

This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition. *Spohn v Van Dyke Pub Schs*, 296 Mich App 470, 479; 822 NW2d 239 (2012).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

We review de novo the interpretation of contractual language. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366-367; 817 NW2d 504 (2012). While questions regarding whether particular conduct constituted gross negligence are generally questions of fact, summary disposition may be granted if reasonable minds could not differ. See *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). Evidence of ordinary negligence does not create a question of fact regarding gross negligence. *Xu v Gay*, 257 Mich App 263, 271; 668 NW2d 166 (2003).

## III. ANALYSIS

Earthcom argues that the trial court erred by granting partial summary disposition in favor of ICS on the ground that the gross negligence exception to the damages limitation of the SCA did not apply to its claims as a matter of law. We disagree.

Gross negligence has been defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Xu*, 257 Mich App at 269. Earthcom argued below, and argues on appeal, that Harvey was grossly negligent in either signing the SCA without reading it, or in failing to review it before hiring former employees of Earthcom once he became president, and that his alleged breach of the no-poaching clause of the SCA was a result of this negligence; hence, the damages claimed by Earthcom "arose" out Harvey's gross negligence and the exception to the damages limitation of the SCA applies. There are several problems with this argument, and we join the trial court in being unpersuaded by it.

In the first instance, although not extensively discussed by the parties or the trial court, we are far from convinced that the alleged improper hiring "arose" out of Harvey's failure to read the SCA, merely because he opined at his deposition that, had he read the SCA, he would not have hired those employees. "Arise" means "to result; spring or issue" from something. See *People v Mutchie*, 251 Mich App 273, 276; 650 NW2d 733 (2002), citing *Random House Webster's College Dictionary* (1992); see also *Vushaj v Farm Bureau Gen Ins Co of Mich*, 248 Mich App 513, 515; 773 NW2d 758 (2009) (stating that courts must interpret contractual terms in accordance with their commonly used meanings and may consult a dictionary when appropriate). Here, Harvey lacked knowledge of the no-poaching clause of the SCA; according to him, had he known of the clause, he would have altered his behavior. But in our judgment, that does not mean that his hiring of the employees resulted, sprung, or issued from this lack of knowledge. His hiring of the employees may have resulted, sprung or issued *despite* his lack of knowledge of the SCA's terms, but it did not result, spring, or issue *from* it.

Earthcom has not presented any authority, and this Court has found none, that says otherwise. In fact, the cases cited by Earthcom from foreign jurisdictions, in addition to not being binding on this Court, and despite the use in many of them of the term "gross negligence," merely stand for the unremarkable proposition that a party who fails to read a contract may not avoid its terms. This is also the law in Michigan. See, e.g., *Rory v Continental Ins Co*, 473 Mich 457, 489 n 82; 703 NW2d 23 (2005) ("This Court has historically held an insured to have knowledge of the contents of the policy, in the absence of fraud, even though the insured did not read it."). See also *Liebelt v Liebelt*, 118 Idaho 845, 848-849; 801 P2d 52 (App, 1990) ("[A] written contract cannot be avoided by one of the parties to it on the ground that he signed it without reading it and did not understand it; failing to read the contract or to have it read to him or to otherwise inform himself as to the nature, terms and conditions of the contract constitutes nothing more than gross negligence on the part of that party and is an insufficient ground upon which to set the contract aside.");[4] *Solomon v First American Nat Bank of Nashville*, 774 SW2d 935, 943 (Tenn App, 1989) ("[F]ailure to read a contract before signing it is gross negligence and should prevent the person guilty of such negligence from setting up that the writing contained terms other than those she believed it to contain."); *Gaskin v Stumm Handel GmbH*, 361, 366 (SDNY, 1975) ("It is a settled

---

[4] *West v Prater*, 57 Idaho 583; 67 P2d 273 (1937), another Idaho case cited by Earthcom, does not refer to gross negligence.

proposition of contract law in this state and nation that the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him."); *Int'l Text-Book Co v Lewis*, 130 Mo App 158; 108 SW 1118, 1119 (1908) ("Defendant failed to read the contract before signing it, and this was gross negligence on his part. The very first line of it contained in bold type, a direction to applicants not to sign the contract without reading it, and, further, that agents were not authorized to change the conditions printed in the blank contract. As defendant could have read the contract before signing it, and was not tricked into signing without reading, but, on the contrary, was warned to read, he cannot evade his promise on a pretense that its execution was induced by fraud."); *White v Idsari*, 253 App Div 96, 100; 300 NYS 1239 (1937) ("If [a person] had an opportunity to read [a contract], and failed so to do, he is guilty of gross negligence. If he is unable to read, he is equally careless if he does not have it read to him. In either case the writing binds him.");[5] *JB Colt Co v Kocher*, 123 Kan 286; 255 P 48, 50 (1927) ("If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." (Quotation marks and citation omitted.)); and *Giesler v United States*, 232 F3d 864, 870-871 (CA Fed, 2000) ("Contrary to the suggestion of the trial court, as quoted above, we conclude that the undisputed facts show that Central Park failed to read the specification, and that Central Park's conduct was not an excusable 'misreading' of the specification, but rather amounted to gross negligence in failing to read the specification and a clear error in business judgment. . . . [S]uch negligence or judgmental errors preclude contractors from obtaining equitable relief.").[6] None of these cases stand for the proposition that challenged conduct "arises out of" the failure to read a contract.[7]

In any event, even assuming that Harvey's hiring of Earthcom's employees "arose" from his failure to read the SCA, we agree with the trial court that no genuine issue of material fact existed as to whether his failure to read to the contract constituted gross negligence under Michigan law. Although Earthcom cites *Xu* in support of its argument, to the extent that it applies, *Xu* actually supports the opposite conclusion. In *Xu*, the decedent died after he fell while using a treadmill in the defendant's fitness center. *Xu*, 257 Mich App at 265. The plaintiff alleged that the decedent had stumbled, was thrown backward into a wall or window ledge located directly behind the treadmill, and then struck his head on the floor. *Id*. The decedent had signed in to the facility on a sheet of paper "that purportedly constituted a release of liability." *Id*. The personal representative of the decedent's estate filed an action alleging ordinary negligence and loss of consortium. *Id*. The trial court dismissed the claim of ordinary negligence on the basis of the sign-

---

[5] See also *In re Stone's Estate*, 272 NY 121, 124; 5 NE2d 61 (1936), and *Szymanski v Gen Tire of Buffalo, Inc*, 30 Misc 2d 384, 389; 219 NYS2d 701 (1961).

[6] See also *Liebherr Crane Corp v United States*, 810 F2d 1153, 1157 (CA Fed, 1987).

[7] It does not appear that Earthcom argues that Harvey's hiring of former ICS employees, standing alone, was gross negligence, although it advances a willfulness argument that we will discuss later in this opinion.

in sheet, but allowed the plaintiff to file an amended complaint alleging gross negligence. *Id*. "[F]ollowing a hearing, the trial court concluded that reasonable minds could not differ and there was insufficient evidence to support a claim of gross negligence." *Id*. at 266.

On appeal, the plaintiff argued that the trial court erred by dismissing the gross negligence claim, arguing that the defendant's admitted lack of knowledge of how treadmills worked, health club industry standards, and the safety recommendations recommended by treadmill manufacturers constituted gross negligence. This Court held that the defendant's "ignorance of and failure to implement these standards" established ordinary negligence, not gross negligence, stating that the "defendant's mere ignorance does not constitute conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted . . . . ." *Id*. at 271.

*Xu* is not on all fours with this case, as it did not involve the defendant's ignorance of contractual terms in an agreement by which he was bound; nonetheless, *Xu* at best supports the proposition that "mere ignorance" of a defendant, even if knowledge would have prevented injury, does not amount to gross negligence. *Id*. In light of *Xu*, the trial court did not err by concluding that, viewed in the light most favorable to the moving party, Earthcom had not established a genuine issue of material fact concerning gross negligence. *Maiden*, 461 Mich at 120.

Earthcom also argues that there was a genuine issue of material fact regarding whether the "willful acts" exception to the limitation on damages applied. Specifically, Earthcom argues that ICS intentionally hired Clark and the technicians, and that this is all that was needed to satisfy the exception. Earthcom argued below (in the context of other claims against Clark not at issue in this appeal) that Clark's actions in seeking employment with ICS and presenting a plan to hire other technicians were deliberate, but in the context of defendants' motion, it did not argue that ICS engaged in willful acts so as to trigger the exception to the damages limitation of the SCA.[8]

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Jonathan Tukel

---

[8] The record contains no evidence that Clark knew of the SCA or made any decisions on behalf of ICS regarding the hiring of the five technicians. Earthcom has not alleged that Clark breached the SCA or caused ICS to breach the SCA.