*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLAS STAVROPOULOS and KATHRYN
STAVROPOULOS,

        Plaintiffs-Appellants,

v

FLIPSPOT GYMNASTICS & CHEER, LLC,

        Defendant-Appellee.

UNPUBLISHED
February 24, 2025
11:27 AM

No. 369891
Oakland Circuit Court
LC No. 2023-198248-NI

Before: MARIANI, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Plaintiffs, Nicholas and Kathryn Stavropoulos, filed a claim to recover damages for injuries Nicholas sustained after he fell while getting onto a trampoline with his and Kathryn's daughter in a youth gymnastics class at a facility owned and maintained by defendant, fLipSpot Gymnastics & Cheer, LLC.[1] Plaintiffs now appeal by right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(7) (dismissal due to release) and MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In October 2021, plaintiffs signed their two-year-old daughter up for a "parent-tot" gymnastics class at defendant's facility. The class was available to children between the ages of 18 months and three years and, by defendant's description, "involve[d] strong parent participation." Nicholas took his daughter to the class for the first time on December 16, 2021. When he first arrived, one of defendant's front-desk employees handed Nicholas a tablet to fill out an electronic document for himself and another for his daughter. One of defendant's employees testified that defendant did not have a waiver on file for Nicholas, which was required before Nicholas could participate in the class with his daughter, so Nicholas was given a waiver form to complete at that time. According to Nicholas, however, the front-desk employee only asked him

---

[1] The record indicates that defendant writes its name as fLipSpot.

to sign in before the class and handed him a tablet that had been scrolled down to a signature line. Regardless, Nicholas provided personal information in the electronic documents where prompted to do so, then electronically signed the document for his daughter and, one minute later, signed the document for himself. Nicholas then proceeded to the parent-tot class with his daughter.

Nicholas thereafter took his daughter to a few more parent-tot classes, including one on April 30, 2022. Nicholas began that class as he usually did by stretching with his daughter. He then assisted her through a few predetermined stations throughout the class. During a free-time period toward the end of the class, Nicholas stepped on padding surrounding an in-ground trampoline while holding his daughter so that he could help her use the trampoline. Nicholas's right foot immediately fell through the padding, which caused his buttocks and left arm to hit the trampoline's metal frame. Immediately thereafter, the class instructors asked Nicholas if he was alright and offered him assistance, but Nicholas stated that he was fine and declined medical attention. Nicholas and his daughter left the facility a few minutes after his fall, and one of the class instructors completed an incident report detailing the situation shortly thereafter.

Nicholas testified that, shortly after his fall, he began experiencing pain in his back and left arm as well as some numbness in his right leg. After a few days, the pain and numbness had not subsided, so he went to see his primary care physician. Despite receiving steroids and muscle relaxers as treatment, the pain and numbness persisted, and he eventually received a magnetic resonance imaging scan and was referred to an orthopedic physician for additional treatment. Nicholas eventually received a back brace, regularly participated in physical therapy, and attended a pain clinic to alleviate his pain and numbness.

In January 2023, plaintiffs filed a complaint against defendant, in which Nicholas alleged claims of ordinary negligence, premises liability, and gross negligence, and Kathryn alleged a loss-of-consortium claim. Defendant thereafter moved for summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that plaintiffs' premises-liability and ordinary-negligence claims were barred by the waiver of liability that Nicholas signed in December 2021 and that there was no material factual dispute that defendant was not grossly negligent. In response, plaintiffs argued that Nicholas did not fairly and knowingly sign the waiver because defendant had misrepresented the waiver as a sign-in sheet; that, even if the waiver was valid, it was inapplicable to Nicholas given the facts of this case; and that they had put forth sufficient evidence from which a reasonable factfinder could conclude that defendant was grossly negligent. Following oral arguments on the matter, the trial court issued a written opinion and order granting defendant's motion for summary disposition and dismissing all of plaintiffs' claims. This appeal followed.

II. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Bartalsky v Osborn*, 337 Mich App 378, 382; 977 NW2d 574 (2021). "When reviewing a motion under MCR 2.116(C)(7), the trial court must accept as true all of the plaintiff's well-pleaded factual allegations and construe them in favor of the plaintiff unless disputed by documentary evidence submitted by the moving party." *Norman v Dep't of Transp*, 338 Mich App 141, 146; 979 NW2d 390 (2021). Summary disposition under MCR 2.116(C)(7) is appropriate when "a valid release of liability exists between the parties." *Johnson v Mich Minority Purchasing Council*, 341 Mich App 1, 10; 988 NW2d 800 (2022). "The interpretation of a release presents a question of law that this

Court reviews de novo." *Radu v Herndon & Herdon Investigations, Inc*, 302 Mich App 363, 374; 838 NW2d 720 (2013).

"Summary disposition [under MCR 2.116(C)(10)] is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). When deciding a motion under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "Evidence offered in support of or in opposition to the motion can be considered only to the extent that it is substantively admissible." *Veenstra v Washtenaw Country Club*, 466 Mich 155, 163; 645 NW2d 643 (2002). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. at 164. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

## III. VALIDITY AND APPLICABILITY OF WAIVER

Plaintiffs argue that the trial court erred by dismissing their ordinary-negligence and premises-liability claims pursuant to MCR 2.116(C)(7) because the waiver of liability signed by Nicholas was neither valid nor applicable to the particular circumstances of this case. We disagree.

"A release of liability is valid if it is fairly and knowingly made." *Xu v Gay*, 257 Mich App 263, 272; 668 NW2d 166 (2003) (quotation marks and citations omitted). "The validity of a release turns on the intent of the parties" as expressed by the terms of the release. *Johnson*, 341 Mich App at 10 (quotation marks and citation omitted). "If the text of the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release, with that plain language being enforced by the court[.]" *Id*. (quotation marks and citations omitted). "The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." *Xu*, 257 Mich App at 272.

"A release is knowingly made even if it is not labeled a 'release,' or the releasor fails to read its terms, or thought the terms were different, absent fraud or intentional misrepresentation designed to induce the releasor to sign the release through a strategy of trickery." *Id*. at 272-273. "A release is not fairly made," and therefore invalid, "if (1) the releasor was dazed, in shock, or under the influence of drugs, (2) the nature of the instrument was misrepresented, or (3) there was other fraudulent or overreaching conduct." *Id*. at 273 (quotation marks and citation omitted). In instances involving allegations of misrepresentation, innocent misrepresentation is insufficient to invalidate a release; rather, "to warrant rescission or invalidation of a contract of release, a misrepresentation must be made with the intent to mislead or deceive." *Paterek v 6600 Ltd*, 186 Mich App 445, 449; 465 NW2d 342 (1990).

Plaintiffs do not dispute that Nicholas electronically signed a document immediately before attending a parent-tot class with their daughter for the first time. Nor do plaintiffs dispute that the document that Nicholas signed was a waiver of liability. Rather, plaintiffs contend that Nicholas did not knowingly sign the waiver because defendant's employee misrepresented the nature of the document at the time of signing, so the waiver is therefore invalid. Plaintiffs' sole evidence of the

alleged misrepresentation is Nicholas's testimony that, upon his arrival, a front-desk employee simply handed him a tablet and told him to sign in, and the tablet was already scrolled down to where he needed to sign at the bottom of the form. Even viewed in the light most favorable to plaintiffs as the nonmoving party, however, this is insufficient in itself to reflect an intentional misrepresentation. See *Xu*, 257 Mich App at 272-273; *Paterek*, 186 Mich App at 449. At very best, such actions might have innocently misrepresented the nature of the document, which is insufficient to invalidate a release. See *Xu*, 257 Mich App at 273; *Paterek*, 186 Mich App at 449.

Moreover, there is ample evidence that Nicholas did more than just sign the waiver. One of defendant's front-desk employees testified that it was impossible for Nicholas to simply sign the waiver as if it were a sign-in sheet because it required him to fill out various other blank portions throughout the document, and the electronic system would have rejected the waiver document if those portions had been left blank. Testimony from Nicholas and defendant's employee, as well as the waiver itself, show that Nicholas did, in fact, fill out these other fields, which required him to provide information such as his name, email, date of birth, medical conditions, allergies, and contact information—personal information that defendant's employees would not have been able to provide themselves. The waiver, which was four pages in length and approximately one third of the entire document handed to Nicholas, was also clearly labeled "Waiver of Liability," stated "Please Read Carefully," and required Nicholas to check a box confirming that he had read the waiver before allowing him to sign and submit the document on the tablet. It is also undisputed that Nicholas filled out and signed the same waiver document for his daughter one minute prior to filling out and signing his own. In other words, Nicholas had two opportunities to read through the waiver but apparently failed to do so. See *Xu*, 257 Mich at 272 (stating that a "release is knowingly made even if . . . the releasor fails to read its terms").

The record evidence also shows that defendant was quite open about its waiver requirement. Defendant's front-desk employee testified that individuals who enroll in a class online—as Kathryn did when she first enrolled her daughter in the parent-tot class—receive a welcome packet, which includes a link to the waiver of liability. Individuals who enroll in a class in person—as Nicholas did when he took his daughter to a parent-tot class for the first time—are handed a tablet containing an electronic copy of the waiver to fill out while at the front desk in the lobby. The gym rules, which are provided in the welcome packets and clearly displayed in defendant's lobby, expressly state in rule nine that every person must sign a waiver before entering the gym and using the equipment. This record, when viewed in the light most favorable to plaintiffs, reflects no genuine issue of material fact that defendant did not intentionally misrepresent the nature of the instrument that Nicholas signed and that the waiver was correspondingly valid. See *Norman*, 338 Mich App at 146.[2]

---

[2] In arguing otherwise, plaintiffs rely heavily on *Dombrowski v City of Omer*, 199 Mich App 705, 710-711; 502 NW2d 707 (1993), in which this Court reiterated that misrepresentation does not warrant rescission absent evidence of an intent to mislead or deceive, but hypothesized that if an employee were to hand a waiver document to a plaintiff "stating that it was merely a sign-up form and of no consequence, then, perhaps, rescission would be appropriate on the basis that [the] plaintiff's signature on the release form had been induced by fraudulent misrepresentation."

-4-

Plaintiffs further argue that even if the waiver is valid, it is inapplicable to the facts of this case because Nicholas was neither a "participant" nor engaged in "activities" within the meaning of the waiver when he sustained his injuries. According to plaintiffs, the waiver only applies to "participants" who engage in "activities" offered by defendant, but Nicholas was merely a "guardian" watching his daughter participate in class activities. We disagree.

The waiver, in relevant part, provides:

> The Participant desire [sic] that as a Participant in fLipSpot, the Participant engage in the activities related to being a Participant (the "Activities"). The Participant and Guardian understand the Activities may include [t]umbling, cheer, gymnastics, other fLipSpot events, parties or field trips. The Participant hereby freely, voluntarily, and without duress executes this Release under the following terms:

> Release and Waiver. Participant and Guardian do hereby release and forever discharge and hold harmless fLipSpot and its successors and assigns from any and all liability, claims, demands of whatever kind or nature, either in law or in equity, which may arise or may hereafter arise from Participant's Activities with fLipSpot. Participant and Guardian understand that this Release discharges fLipSpot from any liability or claim that the Participant or Guardian may have against fLipSpot with respect to bodily injury, personal injury, illness, death, or property damage that may result from Participant's Activities with fLipSpot, whether caused by the negligence of fLipSpot or its officers, directors, employees, or agents or otherwise . . . .

> \* \* \*

> Assumption of the Risk. Participant and Guardian hereby expressly and specifically assume the risk of injury or harm in the Activities and releases [sic] fLipSpot from all liability for injury, illness, death, or property damage resulting from the Activities.

Plaintiffs do not dispute that their daughter was a participant in the parent-tot class, that Nicholas was her guardian, or that Nicholas was present as their daughter's guardian at the time that he was injured; indeed, plaintiffs concede as much in their brief on appeal and attempt to argue that Nicholas's status as a guardian removes him from the scope of the waiver. The plain terms of the waiver, however, do not support plaintiffs' position. The waiver releases defendant from "any liability or claim that the Participant *or Guardian* may have against [defendant] with respect to bodily injury . . . that may result from Participant's activities with" defendant. (Emphasis added.) Thus, under the plain terms of the waiver, Nicholas himself did not need to be a participant in the activities for the waiver to apply to him, and Nicholas's role as a guardian (and his daughter's role

_____

Plaintiffs' reliance is misplaced, however, as this passing example in *Dombrowski* was dictum and, for the reasons already discussed, inapposite on its facts in any event.

-5-

as a participant) was enough to bring Nicholas and his claims of injury—which, at minimum, "result[ed] from [his daughter's] activities" with defendant—within the scope of the waiver.

Furthermore, even if Nicholas's status as a participant was necessary for the waiver to apply, the record reflects that there was no genuine issue of material fact that he was one. Plaintiffs signed their daughter up for a parent-tot class, which was specifically described as "involv[ing] strong parent participation" and as teaching, in relevant part, "simple gymnastics elements"—one of several "activities" unambiguously included in the waiver. See *Johnson*, 341 Mich App at 10. During his deposition, Nicholas described the parent-tot class as "[a]n intro to gymnastics for toddlers with a very heavy presence of parent or guardian *to do it with them*." (Emphasis added.) Nicholas also admitted to supporting his daughter throughout the class and actively engaging in it himself. For instance, Nicholas participated in active stretching with his daughter at the start of each class that he attended with her, walked her to and from various stations, and got onto the trampoline with her. Nicholas also admitted during his deposition that, at the time that he was injured, he was attempting to get onto the trampoline with his daughter so that they could use it. Furthermore, plaintiffs admitted in their complaint that defendant "provided a trampoline for [Nicholas] *and* his child to use" during a parent-tot class. (Emphasis added.) And, as previously mentioned, the waiver form required Nicholas to indicate who was participating and whether they were participating as a minor or an adult, and although Nicholas listed himself as a guardian on his daughter's waiver form, he listed himself as an adult participant on his own waiver form. Accordingly, even when viewed in the light most favorable to plaintiffs, this record does not reflect a genuine issue of material fact that the waiver applied to Nicholas and to the particular circumstances of his injury. *Norman*, 338 Mich App at 146.

In sum, because the proffered evidence, when viewed in the light most favorable to plaintiffs, is insufficient to establish a genuine issue of material fact regarding the validity and applicability of the waiver, plaintiff's ordinary-negligence and premises-liability claims are barred by a release of liability under MCR 2.116(C)(7), and the trial court did not err by granting defendant's motion for summary disposition on that basis. See *Johnson*, 341 Mich App at 10; *Norman*, 338 Mich App at 146.

IV. GROSS NEGLIGENCE

Plaintiffs also argue that the trial court erred by dismissing their gross-negligence claim pursuant to MCR 2.116(C)(10) because they put forth sufficient evidence from which a reasonable factfinder could conclude that defendant was grossly negligent. We disagree.

"A contractual waiver of liability . . . serves to insulate against ordinary negligence, but not gross negligence." *Xu*, 257 Mich App at 269. "Gross negligence is defined as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004) (quotation marks and citation omitted). Indeed, "[g]rossly negligent conduct must be conduct that is substantially more than negligent" and that instead amounts to "a willful disregard of safety measures and a singular disregard for substantial risks." *Bellinger v Kram*, 319 Mich App 653, 659-660; 904 NW2d 870 (2017) (quotation marks and citations omitted). Because gross negligence is a "much less demanding standard of care" than ordinary negligence, *Tarlea*, 263 Mich App at 90, "evidence of ordinary negligence does not create a material question of fact concerning gross negligence," *Maiden v Rozwood*, 461 Mich 109,

122-123; 597 NW2d 817 (1999). Nor do "allegations or evidence of inaction or claims that a defendant could have taken additional precautions." *Bellinger*, 319 Mich App at 660. Instead, to survive summary disposition, "a plaintiff must adduce proof of conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Maiden*, 461 Mich at 123 (quotation marks omitted).

We agree with the trial court that plaintiffs have failed to adduce such proof here. See *id*. Plaintiffs claim that defendant's failure to prevent Nicholas from stepping on the padding surrounding the trampoline amounted to gross negligence. According to testimony from defendant's employees, the padding around the trampoline served as a means to prevent the trampoline's springs from being stepped on, for the protection of the springs as well as the individuals in the gym, and individuals were not supposed to step or stand on the padding. Correspondingly, defendant's employees testified, defendant instructed them to tell individuals not to stand on the padding and they, in turn, repeatedly told individuals to avoid standing on the padding and corrected individuals if they saw them standing on the padding. They also instructed individuals to follow the pathways marked on the ground to safely get on and off all of the equipment in the facility, and to stand or sit on designated markers on the ground while they waited to use a piece of equipment. In addition, defendant had a sign posted in the gym similarly instructing individuals to follow the pathways marked on the gym floor to safely move around the facility and the gym equipment. Employee testimony acknowledged that small children would often end up stepping on the padding on their way on and off the trampoline; their light weight made this less of a potential concern, but they would be instructed not to do so nonetheless. The employee who instructed the parent-tot class at the time that Nicholas fell testified that she instructed the class participants, including Nicholas, on how to properly and safely get onto the trampoline and to avoid stepping on the padding covering the springs.

Plaintiffs, meanwhile, testified that they never received instructions from defendant's employees not to step or stand on the padding; Nicholas also testified that he saw other adults and children standing on the padding during the April 30 class and received instructions that involved class participants standing on the padding as they waited to use the trampoline. Plaintiffs also submitted affidavits from Nicholas's father and aunt, who had each accompanied plaintiffs' daughter to one or two classes at defendant's facility and stated that they and other patrons frequently stepped and stood on the padding around the trampoline, and that they never heard defendant's employees tell anyone not to stand or step on the padding In addition, plaintiffs offered a picture from defendant's social media that showed several people, including defendant's instructors, standing on the padding around the trampoline.

Plaintiffs thus adduced evidence that, when viewed in the light most favorable to them, puts into dispute how consistently or thoroughly defendant's employees instructed its patrons, including Nicholas, to avoid stepping or standing on the padding, and how well they enforced that rule and followed it themselves. While this may be sufficient to create a question of fact regarding ordinary negligence, that in itself is not enough to survive summary disposition on a claim of gross negligence. See *id*. at 122-123; see also *Tarlea*, 263 Mich App at 90 (explaining that gross negligence is a "much less demanding standard of care" than ordinary negligence); *Bellinger*, 319 Mich App at 659-660 ("Grossly negligent conduct must be conduct that is substantially more than negligent. Generally, allegations or evidence of inaction or claims that a defendant could have taken additional precautions are insufficient.") (quotation marks and citations omitted). We fail to

see how the proffered evidence in this case, even when viewed in the light most favorable to plaintiffs, is sufficient to create a genuine issue of material fact that defendant behaved "so reckless[ly] as to demonstrate a substantial lack of concern for whether an injury results." *Maiden*, 461 Mich at 123 (quotation marks omitted).[3]  Accordingly, the trial court did not err by granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) on that basis.  See *El-Khalil*, 504 Mich at 160, 164; *Latham*, 480 Mich at 111.[4]

      Affirmed.

/s/ Philip P. Mariani
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney

---

[3] Plaintiffs also submitted as evidence an affidavit from an expert in "Adventure and Obstacle Sports," who opined on the industry's standard of care regarding the installation, use, and maintenance of in-ground trampolines.  The affidavit, however, was not notarized, so the trial court was not required to consider it.  See *Sherry v East Suburban Football League*, 292 Mich App 23, 31; 807 NW2d 859 (2011) ("Because an affidavit lacking notarization is invalid, a trial court need not consider it.").  And, even if considered, the affidavit only sets forth evidence of industry standards and that defendant should have known about and implemented these standards—which, while perhaps providing proof of a breach of the standard of care for a claim of ordinary negligence, is insufficient to create a genuine issue of material fact regarding gross negligence in this case.  See, e.g., *Xu*, 257 Mich App at 271.

[4] Because the trial court did not err by granting defendant's motion summary disposition under MCR 2.116(C)(7) and (C)(10), the court also did not err by dismissing Kathryn's derivative loss-of-consortium claim.  See *Berryman v K Mart Corp*, 193 Mich App 88, 94; 483 NW2d 642 (1992) ("A claim of loss of consortium is derivative and recovery is contingent upon the injured spouse's recovery of damages for the injury.").